J-S49025-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN GEORGE WATTS | |
| Appellant | No. 3157 EDA 2013 |

Appeal from the Order October 18, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009464-2007
CP-51-CR-0010470-2007

BEFORE: OLSON, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED MARCH 04, 2015**

John George Watts appeals, *nunc pro tunc*, from the order entered on October 18, 2013, in the Court of Common Pleas of Philadelphia County, denying him relief on his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq*. Watts raises three issues in this appeal: (1) did the PCRA court display a fixed bias against Watts, thereby precluding the possibility of a fair and non-prejudicial decision on the merits, (2) did the PCRA err in finding Watts' decision to reject a negotiated plea was knowing, voluntary and intelligent when trial counsel failed to properly inform Watts of his potential sentence, and (3) did the PCRA court err in finding trial counsel was not ineffective for failing to inform Watts of his potential sentence. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

Before we address the substance of this appeal, we make note of the relevant procedural history of this matter. Watts was charged with robbery, criminal conspiracy, terroristic threats, intimidation of a witness and criminal use of a communication facility. The Commonwealth offered Watts a negotiated plea that included a 7 - 20 year term of incarceration. Watts rejected the offer and proceeded to a jury trial. He was convicted and sentenced to 24½ to 50 years and two months' incarceration. His direct appeal afforded him no relief. **See Commonwealth v. Watts,** 998 A.2d 1017 (Pa. Super. 2010) (unpublished memorandum), *appeal denied*, 17 A.3d 1254 (Pa. 2011) (table). He filed the instant PCRA petition raising the issues of trial counsel's ineffectiveness regarding the alleged failure to inform him of his potential sentence. A hearing was held on June 10, 2013. The petition was denied at the end of the hearing. Watts informed the PCRA court of his intention to appeal and on July 5, 2013 filed a timely *pro se* notice of appeal.[1] For unknown reasons, the notice of appeal, although served on the PCRA court as well, was never docketed. Nonetheless, on August 1, 2013, the PCRA court filed an opinion in support of its ruling.

Subsequently, Watts obtained counsel, though it is unclear if counsel was appointed or privately hired. On August 29, 2013, counsel filed a PCRA petition; however, said petition is not to be found in the certified record. It

---

[1] It appears that PCRA counsel was not retained through the filing of the appeal.

appears from subsequent docket entries that Watts sought the recusal of the PCRA judge, the Honorable Chris R. Wogan, and reinstatement of Watts' appellate rights. Judge Wogan denied the request for recusal on October 2, 2013, and granted Watts *nunc pro tunc* relief regarding his appellate rights. Following the filing of a Pa.R.A.P. 1925(b) statement, the PCRA court filed a second opinion on December 19, 2013.

Although the PCRA procedural history is tangled, we are able to address the issues before us.

Initially, we note,

> Our standard of review of a trial court order granting or denying relief under the PCRA requires us to determine whether the decision of the PCRA court is supported by the evidence of record and is free of legal error. "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lippert*, 85 A.3d 1095, 1100 (Pa. Super. 2014).

*Commonwealth v. Perez*, 103 A.3d 344, 347 (Pa. Super. 2014).

Additionally,

> To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *[Commonwealth v.] Sepulveda*, [618 Pa. 262,] 55 A.3d [1108] at 1117 [(2012)]. This Court has described the *Strickland* standard as tripartite by dividing the performance element into two distinct components. *Commonwealth v. Busanet*, 618 Pa. 1, 54 A.3d 35, 45 (2012); *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987). Accordingly, to prove counsel ineffective, the petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error such that there is a reasonable

probability that the result of the proceeding would have been different absent such error. *Sepulveda*, 55 A.3d at 1117 (*citing Pierce*, 527 A.2d at 975). Counsel is presumed to have rendered effective assistance. *Sepulveda*, 55 A.3d at 1117.

A court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the ineffectiveness test, the court may proceed to that element first. *Id*. at 1117-18; *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 701 (1998).

*Commonwealth v. Tharp*, 101 A.3d 736, 747 (Pa. 2014).

Regarding the denial of a motion to recuse,

[Our Supreme] Court presumes judges of this Commonwealth are "honorable, fair and competent," and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice. *Commonwealth v. White*, 557 Pa. 408, 734 A.2d 374, 384 (1999). The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the "decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion."

*Commonwealth v. Kearney*, 92 A.3d 51, 60 (Pa. Super. 2014 )(citations omitted). Finally, "recusal motions must be timely filed." *Rizzo v. Haines*, 555 A.2d 58, 70 (Pa. 1989) *citing Reilly v. SEPTA*, 489 A.2d 1291 (Pa. 1985). In addition, "In order to preserve an issue for appeal, a litigant must make a timely, specific objection at trial". *Reilly*, 489 A.2d at 1296.

Watts' first claim is that Judge Wogan improperly failed to recuse himself after demonstrating prejudice at the June 10, 2013 PCRA hearing. At that hearing, Judge Wogan questioned Watts to see if he had any knowledge regarding an *ex parte* communication with the judge on Watts'

behalf, or to see if he knew anything about Watts' file having been taken from the judge's chambers. Watts denied any knowledge of those events. No objection was raised to the judge asking those questions, nor was any objection raised at the end of the hearing when Judge Wogan issued his order from the bench, denying the petition. The motion to recuse was not docketed, but was apparently served on the trial court and the Commonwealth by mail on September 27, 2013, more than three months after the hearing and denial of the petition. Because there was no timely objection raised at the time of the hearing, the motion to recuse was not filed until three months after the hearing, and more than one month after Judge Wogan filed his initial opinion, we conclude the motion was untimely and the issue has been waived.

Watts' remaining issues are related and will be addressed together. Watts argues that his rejection of the Commonwealth's plea offer was not knowing, voluntary and intelligent because none of his lawyers ever informed him of the potential sentence he faced if convicted on all charges.

Watts' argument rests upon the

general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." [**Missouri v. Frye**, ___U.S.___, 132 S.Ct. 1399] at 1408 [(2012)]. In determining whether counsel has satisfied this obligation, the two-part test set forth in **Strickland** [**v. Washington**, 466 U.S. 668, 104 S.Ct. 2052 (1984)] applies.[FN3] **See id.** at 1409. In **Lafler** [**v. Cooper**, ___U.S.___, 132 S.Ct. 1376 (2102)], the Court explained that to meet the prejudice prong of the **Strickland** test where the alleged ineffectiveness of counsel

- 5 -

involves the defendant's rejection of a plea offer, the defendant must show,

> FN3. That test requires that a defendant show that counsel (1) had no reasonable basis for their actions or inactions, and (2) the defendant suffered prejudice as a result of counsel's conduct. In Pennsylvania, our Supreme Court has added one additional component to the **Strickland** test, requiring that a defendant also prove that the underlying claim has arguable merit. **See Commonwealth v. Bennett**, 57 A.3d 1185, 1195 (Pa. 2012).

> that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court ( *i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

> **Lafler**, 132 S.Ct. at 1385.

**Commonwealth v. Feliciano**, 69 A.3d 1270, 1276-77 (Pa. Super. 2013).

At the PCRA hearing, Watts testified that none of the attorneys who represented him throughout the process[2] ever informed him of the total sentence he faced. Rather, he was only told of the 10-20 year mandatory minimum sentence he was subject to as a second strike robbery offender. N.T. PCRA Hearing, 6/10/2013, at 15-16. Watts further claimed that he was

---

[2] The record reflects two attorneys from the Defender Association met with Watts prior to trial as well as appointed counsel, who represented Watts at trial after the Defender Association withdrew because of conflict.

told he would likely serve 16 years of his sentence. *Id*. at 10. Therefore, he reasoned, the 7-20 year offer from the Commonwealth did not represent an actual benefit and appointed counsel recommended he reject the offer. *Id*. at 10.

The three lawyers who represented Watts also testified at the hearing. Robert Jovanov, Esq., of the Defender Association testified he met with Watts at Curran Fromhold Prison prior to the pretrial conference. *Id*. at 30. He explained to Watts that, if convicted on the robbery charge, it would be at least his second strike[3] with a 10-20 year mandatory minimum sentence. *Id*. at 31. He informed Watts of the Commonwealth's offer. *Id*. at 30. However, Watts told Jovanov that he was innocent and wanted to go to trial. *Id*. at 32.

Vincent Corrigan, Esq., of the Defender Association, testified next. In relevant part, he produced his handwritten notes from his April 2, 2008, meeting with Watts. These notes detailed Corrigan's explanation to Watts of what he might expect regarding sentencing if he went to trial before Judge Wogan and was convicted:

> And I indicated that if he was convicted of robbery he would have to get 10 to 20 because the case was a second strike; that for conspiracy he would probably get about 4 to 10; for PIC I

---

[3] Watts' criminal history was unclear, and there may have been two prior robbery convictions. There was indication of two prior convictions before Judge Maier.

estimated about 14 months to 4 years; for reckless endangerment I estimated 6 months to 2 years; for witness intimidation I estimated 6½ to 15 years; and for use of a communications facility I estimated 11 months to 5 years, for a total of -- approximately 23½ to 54 years was my estimation of the sentence he would receive from Judge Wogan if he went to trial and lost.[4]

N.T. PCRA Hearing, 6/10/2013, at 52. Attorney Corrigan also testified Watts told him he did not do it, and wanted house arrest. *Id*. at 51.

Finally, trial counsel, John Cotter, Esq., testified he told Watts about the Commonwealth's 7-20 year offer, but that Watts was not interested. *Id*. at 65-66. On his own, Cotter made a counter proposal to the Commonwealth of 7-14 years', but the Commonwealth rejected those terms. *Id*. at 66. He testified he reminded Watts of the 10-20 year mandatory minimum sentence he faced and that, if convicted on all charges, Watts likely would receive two to three times the mandatory sentence – meaning a minimum sentence of between 20 to 30 years' incarceration. *Id*. at 66-67. Further, he testified he recommended Watts accept the offer in light of Watts' potential exposure. *Id*. at 67.

Additionally, Cotter was questioned about a discussion that took place following the pretrial hearing on Watts' Rule 600 "speedy trial" motion. Watts was present during the discussion about the Commonwealth's offer at

---

[4] Corrigan's estimate proved to be a remarkably accurate prediction. Watts received a sentence of 24½ to 50 years and two months' incarceration.

which time Judge Wogan stated, "There is an awful lot of exposure if the defendant is found guilty. We won't be talking about 7 or 10 years: that is just a fraction of what will happen in here normally so, if there are crimes of violence and there are convictions." *Id*. at 67-68. Cotter testified that following Judge Wogan's statement, Watts never expressed surprise at the prospect of a long sentence, did not express confusion and never asked to plead guilty. *Id*. at 68-69. Finally, we note this exchange:

> [ADA Mahler:] So does this case stand out in your mind at all, in terms of your having a specific recollection?
>
> [Cotter:] I do.
>
> [ADA Mahler:] And tell me about that. Why do you remember this case, just briefly?
>
> [Cotter:] Because I wanted the defendant to take the deal and I recommended it and … his response was, I want a jury trial. I want to plead not guilty. I didn't do it. That's what he told me whenever I tried to approach the subject, which is fine. I have no problem with that.

*Id*., at 84.

Based upon the forgoing evidence, the trial court determined, "[t]he three attorneys that testified, two of whom I'm pretty familiar with, all testified in a credible fashion." *Id*. at 98. Further, he determined Watts "testified completely without credibility[.]" *Id*. at 99. Our review of the certified record finds ample support for these determinations. The certified record demonstrates Watts was told multiple times he faced a significant

prison sentence if convicted. One of his lawyers even provided an accurate prediction of the sentence he anticipated. Watts' response to the plea offer was a consistent refusal accompanied by an assertion of innocence. Accordingly, counsel cannot be ineffective for failing to inform Watts of his possible sentence and Watts' rejection of the plea offer was knowing, voluntary and intelligent.

Because the PCRA court's ruling is supported by the record and is free from legal error, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/4/2015