J. S82029/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
MATTHEW SCOTT SEXTON, :
:
APPELLANT : No. 888 MDA 2016

Appeal from the PCRA Order May 20, 2016
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0001217-2013

BEFORE: OTT, DUBOW AND PLATT,[*] JJ.

MEMORANDUM BY DUBOW, J.: **FILED MARCH 07, 2017**

Appellant, Matthew Scott Sexton, appeals from the May 20, 2016 Order denying his first Petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. He challenges the effectiveness of trial counsel. After careful review, we affirm.

We summarize the relevant factual and procedural history as follows. On June 26, 2014, Appellant entered an open guilty plea to two counts of Involuntary Deviate Sexual Intercourse ("IDSI"), and one count each of Statutory Sexual Assault, Aggravated Indecent Assault, Endangering the Welfare of Children, Corruption of Minors, and Indecent Assault[1] for his

---

[*] Retired Senior Judge Assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3123(a)(7), 3122.1(a)(1), 3125(a)(8), 4304(a)(1), 6301(a)(1)(i), and 3126(a)(8), respectively.

months-long sexual relationship with a 14-year-old male victim. The trial court deferred sentencing pending the completion of a Pre-Sentence Investigation ("PSI") and to permit the Sexual Offenders Assessment Board ("SOAB") to conduct a Sexually Violent Predator ("SVP") Assessment.

On October 22, 2014, the parties returned for sentencing. On that day, Appellant and the Commonwealth entered into a modified plea agreement in which the Commonwealth agreed to waive the then-applicable mandatory minimum sentences and ask the trial court instead to sentence Appellant to a minimum sentence within the standard guideline range.[2] In exchange, Appellant would receive a maximum sentence of 20 years of imprisonment. The trial court sentenced Appellant to a term of 4-20 years of imprisonment for one count of IDSI, the very bottom of the standard range of the sentencing guidelines. The trial court imposed concurrent sentences on the remaining charges, for an aggregate term of 4-20 years of imprisonment.

Appellant did not file a direct appeal. On March 19, 2015, Appellant filed a *pro se* PCRA Petition averring ineffective assistance of counsel. The

---

[2] At the time of Appellant's sentencing, a 10-20 year mandatory minimum sentence applied to Appellant's IDSI convictions. 42 Pa.C.S. § 9718. In addition, a 5-10 year mandatory minimum sentence applied to Appellant's Aggravated Indecent Assault conviction. **Id.** As discussed **infra**, our Supreme Court subsequently held that the mandatory minimum sentencing provisions codified in 42 Pa.C.S. § 9718 are unconstitutional. **See Commonwealth v. Wolfe**, 140 A.3d 651, 660-61 (Pa. 2016).

PCRA court appointed counsel, and PCRA counsel filed two supplemental Petitions.[3]

On February 22, 2016, the PCRA court held an evidentiary hearing on Appellant's Petition. The PCRA court aptly summarized the proceedings as follows:

> At the PCRA hearing, [Appellant] advanced three grounds in support of his claim for collateral relief. He first claimed that his Defense Counsel failed to fully inform the [c]ourt of various mitigating factors at sentencing. Second, he charged that Defense Counsel should have challenged the constitutionality of Section 3123 of the Crimes Code, which defines the offense of IDSI. Third, he complained of Defense Counsel's advice regarding his plea agreement.
>
> At the PCRA hearing, [Appellant] testified that he took full responsibility for his conduct. However, he complained that Defense Counsel only mentioned, without elaboration, various mitigating factors at Sentencing which he had hoped would persuade the [c]ourt to impose a mitigated sentence. [Appellant] explained that at the time of the offenses[,] he was suffering from untreated bipolar disorder and Attention Deficit Disorder ("ADD") and that both conditions impacted his mental state. He acknowledged that Defense Counsel brought his mental health problems to the [c]ourt's attention at Sentencing, but felt that he should have provided the [c]ourt with a description of the manifestations of these disorders which affected his thought process at the time he committed these offenses.
>
> [Appellant] admitted that he was uncertain that he had actually related any specific information about the effects of these

---

[3] The procedural history of the instant appeal was made complicated by ongoing disputes between Appellant and his appointed PCRA counsel. These disputes necessitated additional hearings and amended filings. As the parties are familiar with these details and they are not relevant to our disposition, we merely summarize the arguments ultimately advanced by Appellant.

conditions to Defense Counsel. However, he insisted that he had mentioned them and had requested that Defense Counsel obtain his medical records. He acknowledged that Defense Counsel had obtained medical records from Philhaven, where [Appellant] had been treated for two months, but complained that he never obtained records from [Appellant's] primary care physician. [Appellant] explained that those records would have indicated his history which included a suicide attempt and mental illness dating back to 2007. He had also wanted Defense Counsel to call to the [c]ourt's attention that his ADD treatment included Adderall, a stimulant which could have caused certain behavioral disruptions on top of his bipolar condition.

[Appellant] also explained that he had voiced concerns regarding his IDSI charge to Defense Counsel. He felt that the statutory definition of IDSI is discriminatory and prejudicial because it is based on the perceived immorality of the act prohibited and is prejudicial toward "same-sex pairing that physically cannot have the usual kind of sex as defined under the definition of sexual intercourse." [N.T., 2/22/16, at 9]. [Appellant] explained that he mentioned that he just "didn't feel that the laws were right" to Defense Counsel before Sentencing and that Defense Counsel told him that "the law is the law and that is what they have to go by." [*Id.*] [Appellant] explained that he had wanted Defense Counsel to bring this up to the Court at the time of sentencing in the hope that he would receive a lesser sentence. However, [Appellant] acknowledged that he never actually expressed this desire to Defense Counsel, but only told him that he felt the laws were unfair.

[Appellant] was sentenced in accordance with a plea bargain whereby the Commonwealth waived the ten-year mandatory minimum sentence then applicable to the IDSI charge in exchange for a twenty-year maximum, with the [c]ourt to determine his minimum sentence within the standard guideline range. [Appellant] testified that he and Defense Counsel had discussed the fact that some statutes providing for certain mandatory minimum sentences had been struck down and he asked whether this might affect his case. He felt that, even though the mandatory minimum applicable to his case had been waived by the Commonwealth, this issue was still pertinent because the Commonwealth was requesting the Court to impose the maximum allowable sentence at the tail end in exchange for that waiver. However, after this discussion with Defense

Counsel, [Appellant] testified that he "dropped the subject." [*Id.* at 18.] At the PCRA Hearing, [Appellant] contended that he should not have accepted such a plea bargain. He now seeks a lesser maximum sentence or dismissal of the IDSI charge.

On cross-examination, [Appellant] admitted that he could not recall actually telling Defense Counsel about his ADD, but noted that this condition would have been indicated in the records of his primary care physician. When he asked Defense Counsel to obtain his medical records, he assumed it would include all of them. He knew that he had signed a release only for Philhaven, and not for any other provider. However, he could not remember when he realized that only the Philhaven records had been requested. He believes that the [c]ourt would have realized that he was not in full control of his actions at the time of these offenses and would have "shown mercy" had this information been presented. [*Id.* at 16.] [Appellant] admitted that[,] although he was not incarcerated at the time, he did nothing to obtain the records on his own.

. . . [Appellant] also acknowledged that Defense Counsel arranged for [Appellant's] sister to appear in [c]ourt and that his mother had written a letter to the Judge prior to Sentencing and that both had advised the [c]ourt that this conduct was very out of character for [Appellant]. He also acknowledged that Defense Counsel had referenced [Appellant's] marijuana and alcohol use during Sentencing.

[Appellant acknowledged that he did not want to withdraw his guilty plea. He also admitted that when the Sentencing Judge outlined his plea agreement, including the maximum term of 20 years of imprisonment, Appellant stated that he understood it and wanted to go through with it.]

Defense Counsel also testified at the PCRA hearing. He explained that he met with [Appellant] thirteen times over the course of his representation up to Sentencing. At their initial meeting, Defense Counsel asked [Appellant] whether he had ever been diagnosed or treated for any mental health issues or was taking medication. [Appellant] had explained that he suffered from depression, anxiety, and bipolar disorder and was taking medication for depression, but only gave Defense Counsel the name of one provider and that person worked at Philhaven. The records he had obtained from Philhaven made no reference to [Appellant's] primary care physician. [Appellant] never

identified any other physicians or psychiatrists and Defense Counsel could not recall [Appellant] ever requesting that he obtain the medical records from his primary care physician.

Defense Counsel also had [Appellant] evaluated by Dr. Jerome Gottlieb to explore the possibility of pursuing a mental health or insanity defense. Dr. Gottlieb did recognize the possibility that [Appellant] had a personality disorder, suffered from depression, and had significant drug and alcohol use. However, he found no basis for a mental health or insanity defense as his evaluation revealed that [Appellant] was aware of what he was doing at the time of the offenses, knew that his conduct was criminal in nature, and was competent to assist in his own defense. Defense Counsel noted that he had conveyed the information regarding [Appellant's] mental health issues to the [c]ourt.

Defense Counsel also recalled that [Appellant] had expressed his feeling that the IDSI statute discriminated against him because he was homosexual. [In particular, Defense Counsel testified that Appellant's claim that he was being discriminated against was not in regards to the constitutionality of the statute, but "more in reference to the district attorney agreeing or not agreeing to waive mandatories or what type of plea it would be." *Id.* at 37-38.] However, [Appellant] never asked Defense Counsel to take any action to challenge the statute.

Defense Counsel recalled discussing mandatory minimum sentences and advised [Appellant] that there was authority for a potential challenge to the mandatory minimum which could be imposed on his IDSI charge. However, prior to Sentencing, they never discussed the possibility of pursuing any such challenge.

PCRA Court Opinion, filed 5/20/16, at 3-7 (footnote omitted).

Following the evidentiary hearing, the PCRA court denied Appellant's Petition. Appellant timely appealed, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following three issues:

1. [Defense] Counsel was ineffective for failing to argue mitigating factors at sentencing, thus resulting in [Appellant] receiving a longer sentence.

2. [Appellant] should be granted his PCRA Petition because certain sexual acts are not more deviant than other sexual acts, and as such, the laws are unconstitutional and [Appellant] should not have been charged with Involuntary Deviate Sexual Intercourse.

3. [Defense] Counsel was ineffective for failing to argue that[,] at the time of sentencing, **Commonwealth v. Wolfe**, [106 A.3d 800 (Pa. Super. 2014)] was being considered by the Court, and as such failed to argue that this is a factor that should be considered by the [s]entencing [c]ourt when sentencing [Appellant's] maximum sentence.

Amended Pa.R.A.P. 1925(b) Statement.[4]

When reviewing the denial of PCRA Petition, "we examine whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa. 2014) (citation and internal quotation marks omitted). We grant great deference to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record. **Commonwealth v. Wilson**, 824 A.2d 331, 333 (Pa. Super. 2003). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light

---

[4] While his appeal was pending, and after Apppellant's counsel had filed his Brief, Appellant filed a *pro se* communication to this Court averring that his PCRA counsel had failed to include a challenge to his maximum sentence in the instant appeal, and requesting the appointment of new counsel. We denied the request for new counsel, but remanded the case for the PCRA court to conduct a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). **See** Order, filed 11/10/16. On remand, Appellant elected to proceed with PCRA counsel, and the PCRA court permitted Appellant to amend his Pa.R.A.P. 1925(b) Statement to include this third issue. Therefore, although Appellant's **Wolfe** claim was not developed in his Brief to this Court, we decline to find it waived.

most favorable to the prevailing party at the trial level." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (citation omitted). Moreover, "where a PCRA court's credibility determinations are supported by the record, they are binding on the reviewing court." ***Commonwealth v. White***, 734 A.2d 374, 381 (Pa. 1999).

All three of Appellant's issues contend that trial counsel provided ineffective assistance to Appellant. In analyzing claims of ineffective assistance of counsel, we presume that trial counsel was effective unless the PCRA petitioner proves otherwise. ***Commonwealth v. Williams***, 732 A.2d 1167, 1177 (Pa. 1999). In order to succeed on a claim of ineffective assistance of counsel, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice. ***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003). Appellant bears the burden of proving each of these elements, and his "failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009).

A petitioner cannot prevail on a claim of ineffective assistance of counsel unless he satisfies the prejudice prong, which requires that he show that "but for the act or omission in question, the outcome of the proceedings would have been different." ***Commonwealth v. Washington***, 927 A.2d

586, 594 (Pa. 2007) (citation and internal quotation marks omitted). Moreover, "[where] the underlying claim lacks arguable merit, counsel cannot be deemed ineffective for failing to raise it." *Commonwealth v. Koehler*, 36 A.3d 121, 140 (Pa. 2012). With this standard in mind, we address each of Appellant's claims.

## Mitigating Factors at Sentencing

In his first issue, Appellant avers that "[t]rial [c]ounsel should have brought up several mitigating factors that Appellant feels would have made a positive influence on the [c]ourt's sentencing." Appellant's Brief at 10. Appellant also avers that trial counsel was ineffective for failing to request and provide to the trial court "copies of Appellant's medical records to establish his mental capacity and acknowledge his history of mental illness." *Id.* at 10.

The Honorable John C. Tylwalk presided over Appellant's PCRA Petition as well as his guilty plea and sentencing. In his Opinion denying Appellant's PCRA Petition, Judge Tylwalk cataloged the substantial information he reviewed prior to imposing sentence, including multiple accounts of Appellant's ongoing mental health struggles. The evidence presented at sentencing included (i) letters and testimony from Appellant's family arguing that he was under the influence of substances and not in his right mind; (ii) argument from trial counsel regarding Appellant's history of mental health issues and substance abuse; (iii) a PSI report detailing Appellant's long

history of depression as well as the fact that he was off of his psychiatric medication and abusing substances at the time of the offense; and (iv) the results of Appellant's SVP Assessment by they SOAB, which further detailed his mental health history. PCRA Court Opinion, filed 5/20/16, at 8-10.

As Judge Tylwalk explained, Appellant's instant claim fails to satisfy the prejudice prong as follows:

> We believe that the information before the [trial court] regarding [Appellant's] use of psychiatric medication and the side effects which may have affected his ability to "think clearly" was sufficient to apprise us of this aspect of his mental condition. We also believe that Defense Counsel, the SOAB report, and the PSI provided ample information of [*sic*] [Appellant's] overall mental condition and substance abuse history and that is was unnecessary for Defense Counsel to expound on those subjects.
>
> At the Sentencing hearing, we were advised that [Appellant] had agreed to accept a sentence within the standard range with a twenty-year maximum in exchange for a waiver of the mandatory minimum. The standard range was forty-eight to sixty-six months. Our review of the information before us revealed that this was an appropriate sentence and we sentenced [Appellant] to the bottom of that standard range. [Appellant] has presented nothing to us in this PCRA proceeding to persuade us that we would have imposed a lesser sentence had Defense Counsel provided anything additional.

*Id.* at 10.

After careful review, we conclude that the PCRA court's conclusions are supported by the record and free from legal error. Therefore, Appellant is not entitled to relief on this claim.

- 10 -

## Constitutionality of IDSI Statute

In his second issue, Appellant avers that trial counsel was ineffective for failing to challenge the constitutionality of the statute defining IDSI on the grounds that "it's prejudicial against same-sex pairing[s] . . . ." Appellant's Brief at 13.

The offense of IDSI is defined, in relevant part, as follows:

(a) Offense defined.—A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant:

\* \* \*

(7) who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not married to each other.

18 Pa.C.S. § 3123(a)(7).  The term "deviate sexual intercourse" is defined as "[s]exual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal.  The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic[,] or law enforcement procedures."  18 Pa.C.S. § 3101.

This Court addressed a similar challenge to the constitutionality of the IDSI statute in ***Commonwealth v. Gautieri***, 636 A.2d 1153 (Pa. Super. 1994).  There, we concluded that:

IDSI does not proscribe consensual oral or anal intercourse, but rather acts of deviate sexual intercourse that are involuntary. This classification does not discriminate against unmarried adults (homosexual or otherwise) because the Commonwealth does

- 11 -

have a strong interest in preventing people from being forced against their will to submit to sexual conduct.

*Id.* at 1155-56 (citation and internal quotation marks omitted).

Moreover, as the PCRA court noted, there is nothing in the statute or the definition of "deviate sexual intercourse" that is discriminatory against individuals engaged in same-sex relationships. The statutory definition applies equally to male and female perpetrators, and whether or not their victims are of the same sex or the opposite sex. Appellant is not being penalized for choosing to engage in a sexual relationship with another male; he is being penalized for choosing to engage in a sexual relationship with a 14-year-old victim who was legally incapable of consenting to the act.

As Appellant's underlying challenge to the constitutionality of the IDSI statute is without merit, trial counsel cannot be found ineffective for failing to raise it. Therefore, Appellant is not entitled to relief on this claim.

### **Mandatory Minimum Sentence**

In his final issue, Appellant avers that the trial court erred in denying his PCRA Petition because he "would've wanted [trial counsel] to argue that the mandatory minimums were being brought under questioning and making such a deal with that mandatory [maximum] was inappropriate and it should've been left up to [the trial court] as to my sentencing instead of a deal like that." N.T., 2/22/16, at 12.

In a criminal case, defendants are entitled to the effective assistance of counsel both at trial and during plea negotiations. ***Commonwealth v.***

*Hickman*, 799 A.2d 136, 141 (Pa. Super. 2002). "A defendant is permitted to withdraw his guilty plea under the PCRA if ineffective assistance of counsel caused the defendant to enter an involuntary plea of guilty." *Commonwealth v. Kersteter*, 877 A.2d 466, 468 (Pa. Super. 2005). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hickman, supra* at 141 (citation and internal quotation marks omitted).

The seminal case of *Alleyne v. United States*, 133 S.Ct. 2151 (2013), held that any fact triggering a mandatory minimum sentence must first be submitted to a jury and proved beyond a reasonable doubt. In Pennsylvania, *Alleyne* triggered a string of cases finding certain mandatory minimum sentencing schemes unconstitutional. *See, e.g., Commonwealth v. Hopkins*, 117 A.3d 247 (Pa. 2015) (finding mandatory minimum for Drug-Free School Zones violation unconstitutional).

At the time Appellant plead guilty and was sentenced on the instant offenses, certain mandatory minimum sentences applied to sexual offenses committed against minor victims. Although *Commonwealth v. Wolfe*, 106 A.3d 800 (Pa. Super. 2014), would soon hold these sentencing statutes are unconstitutional, it is a well-established principal that counsel may not be deemed ineffective "for failing to anticipate changes in the law." *Commonwealth v. Patterson*, 143 A.3d 394, 397 (Pa. Super. 2016). In

spite of this general rule, this Court has held that trial counsel may be found ineffective for failing to advise a client "about *Alleyne*'s applicability to his case." *Id.* at 399.

In *Patterson*, the petitioner pled guilty to certain drug charges while *Alleyne* was still pending in the United States Supreme Court. *Id.* at 396. Shortly after *Alleyne* was decided, the trial court sentenced petitioner pursuant to a negotiated plea agreement that called for a sentence slightly below the applicable mandatory minimum. *Id.* In his PCRA Petition, he averred that he only pled guilty to avoid the mandatory minimum sentence, and that, had counsel advised him of *Alleyne* at any point prior to the imposition of his sentence, he would have withdrawn his guilty plea. *Id.* at 398-99. Ultimately, this Court remanded for an evidentiary hearing to determine "whether counsel did, in fact, fail to advise Appellant about *Alleyne*'s applicability to his case." *Id.* at 399.

The facts of the instant case are readily distinguishable from *Patterson* and do not entitle Appellant to relief. At the PCRA hearing, both Appellant and his trial counsel testified that prior to sentencing, Appellant was well aware of *Alleyne*, its progeny, and their potential applicability to his case. Moreover, despite already being aware of this potential challenge to the applicable mandatory minimums, Appellant testified at sentencing that he was aware of the terms of the agreement and wished to accept the

Commonwealth's offer of a minimum sentence in the standard range and a maximum sentence of 20 years of incarceration.

It is clear from the record that trial counsel properly advised Appellant that he might be able to successfully challenge the constitutionality of the applicable mandatory minimum sentences. This advice is well within the range of competence required and, therefore, Appellant failed to establish that he is entitled to relief on this claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/7/2017