734 A.2d 374

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Maxine Davidson WHITE, as next friend
to Gary Heidnik, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 24, 1999.

Decided June 23, 1999.

Reargument Denied July 1, 1999.

James Moreno, Philadelphia, for Maxine White.

Catherine Marshall, Philadelphia, Robert A Graci, Office of Attorney General, Harrisburg, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, NIGRO, NEWMAN, and SAYLOR, JJ.

## OPINION

NIGRO, Justice.

Maxine Davidson White (Appellant) appeals from an Order of the Court of Common Pleas finding that she lacks standing to bring a Post Conviction Relief Act[1] (PCRA) petition on behalf of Gary Heidnik as his next friend. For the reasons that follow, we affirm.

Following the reasoning of the United States Supreme Court in *Whitmore v. Arkansas,* 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990), our state jurisprudence provides that a third party, such as Appellant, who seeks standing to bring a

---

1. 42 Pa.C.S. §§ 9541 et seq.

PCRA appeal on behalf of a defendant as his next friend must first make two distinct showings. First, the putative next friend must provide an adequate explanation, such as lack of access to the courts, mental incapacity or other disability, as to why the defendant is incompetent to appear on his own behalf and litigate his own cause. *See Commonwealth v. Bronshtein,* 556 Pa. 545, 551–56, 729 A.2d 1102, 1105–07 (1999)(applying *Whitmore* reasoning to issue concerning mother and sister's standing as putative next friends of defendant to appeal the voluntary dismissal of his PCRA petition); *see also In re Heidnik,* 554 Pa. 177, 183–85, 720 A.2d 1016, 1020 (1998)(noting that *Whitmore* reasoning is directly applicable to the issue of next friend standing to file an appeal that has been waived by the real party in interest). Secondly, the putative next friend must establish that they have a significant relationship to, and are truly dedicated to the best interests of, the real party in interest on whose behalf they seek to litigate. *Id.* In the instant case, the PCRA court determined that Appellant lacked standing to file a PCRA petition on Heidnik's behalf as his next friend because she failed to demonstrate that Heidnik has a mental incapacity that renders him incompetent to appear on his own behalf and litigate his own cause. It is this finding that Appellant now challenges.

This case has a somewhat complicated procedural history. On July 1, 1988, a jury convicted Gary Heidnik of two counts of murder in the first degree, six counts of kidnapping, five counts of rape, four counts of aggravated assault and two counts of involuntary deviate sexual intercourse. Following a sentencing hearing, the jury returned two verdicts of death against Heidnik. On March 2, 1989, the trial court formally imposed the sentences of death.

Following the formal imposition of his sentences of death, Heidnik filed a direct appeal to this Court. However, during the pendency of his direct appeal, Heidnik expressed a desire to have his execution carried out as quickly as possible, and instructed his attorney to abandon his appeal. Despite Heidnik's wishes to completely abandon his appeal, this Court retained jurisdiction over the matter, and conducted a statuto-

rily mandated review of the sufficiency of the evidence and the proportionality of Heidnik's death sentences. Concluding that the evidence was sufficient to sustain the jury's verdicts against Heidnik, and that his death sentences were neither excessive nor disproportionate to the penalty imposed in similar cases, this Court sustained Heidnik's convictions for first degree murder and affirmed his sentences of death. *Commonwealth v. Heidnik,* 526 Pa. 458, 587 A.2d 687 (1991). Thereafter, Heidnik made no further efforts to seek appellate review, and on March 20, 1997, the Governor issued a death warrant with execution scheduled for April 15, 1997.

On April 11, 1997, attorney Billy H. Nolas of the Center for Legal Education, Advocacy & Defense Assistance (CLEADA) filed a petition for a stay of Heidnik's execution pursuant to *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986)[2] in the Philadelphia Court of Common Pleas, arguing that Heidnik was mentally incompetent to face execution. That same day, CLEADA filed an application for a stay of execution pursuant to *Ford v. Wainwright* in this Court, requesting that this Court issue a stay of execution if the Court of Common Pleas denied the stay or failed to act by 5:00 p.m. on April 14, 1997. On April 14, 1997 Judge Poserina of the Philadelphia Court of Common Pleas held a hearing concerning Heidnik's competency to face execution. Following the hearing, Judge Poserina denied CLEADA's petition for a stay of execution.

On April 15, 1997, CLEADA filed a supplement to its earlier application for a stay of execution in this Court. That same day, CLEADA filed a motion in federal district court requesting a grant of in forma pauperis status, a stay of Heidnik's execution, the appointment of habeas corpus counsel, and, if necessary, a grant of next friend standing to Appellant pursu-

2. In *Ford v. Wainwright,* the United States Supreme Court held that the Eighth Amendment prohibits the states from executing a prisoner who is insane. *Id.* at 409–10, 106 S.Ct. 2595. The several opinions in support of the judgment in *Wainwright* suggest that, at a minimum, a condemned prisoner must be able to comprehend the reason for the death penalty and its implications before having his sentence carried out. *Id.* at 417, 106 S.Ct. 2595.

ant to *Whitmore v. Arkansas*, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). On April 16, 1997, this Court entered a per curiam order staying Heidnik's execution until further order of this Court. Meanwhile, federal district court judge Franklin S. Van Antwerpen granted a temporary stay of execution, and conducted an emergency evidentiary hearing to determine whether or not Heidnik was competent to litigate his own cause. Following the hearing, the district court issued an order denying relief, but continuing its stay of execution pending an appeal to the Third Circuit Court of Appeals. On appeal, the Third Circuit reversed the district court's decision, holding that Heidnik was incompetent to litigate his own cause, and that Appellant should be granted next friend status to appeal on his behalf. The Commonwealth appealed the Third Circuit's decision to the United States Supreme Court, which issued an order vacating the order staying Heidnik's execution on April 19, 1997.

On April 18, 1997, CLEADA filed a petition in this Court seeking review of Judge Poserina's April 14, 1997 order denying a stay of Heidnik's execution.[3] On April 19, 1997, we granted the petition for review and directed Appellant to address the order of the Court of Common Pleas, as well as the following four issues in her brief: 1.) whether Pennsylvania recognizes the concept of "next friend" standing under state jurisprudence; 2.) if so, what are the standards under which "next friend" standing is recognized under state jurisprudence; 3.) whether standards for "next friend" standing under state jurisprudence differ from the standards under federal jurisprudence; and 4.) whether this Court should adopt the federal standard. Following oral arguments, in August of 1998, this Court issued an opinion clarifying the requirements for next friend standing under our state jurisprudence and affirming the Court of Common Pleas' determination that Heidnik was competent to face execution. *In re Heidnik*, 554 Pa. 177, 720 A.2d 1016 (1998).

**3.** In the petition for review to this Court, Appellant explicitly claimed entitlement to next friend status as Gary Heidnik's daughter.

On September 18, 1998, Appellant filed a petition seeking habeas corpus relief and statutory post-conviction relief under the PCRA on Heidnik's behalf.[4] Appellant asserted standing to file the PCRA petition on Heidnik's behalf as his next friend pursuant to *Whitmore v. Arkansas,* 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). In addressing the question. of Appellant's standing as Heidnik's next friend, the PCRA court apparently assumed that Appellant, as Heidnik's daughter, had a significant relationship with Heidnik and was truly dedicated to his best interests. Therefore, the PCRA court turned its attention to the question of whether or not Appellant could establish that Heidnik was incompetent to litigate his own cause and waive his appellate rights. In order to assist it in determining whether or not Heidnik was competent to litigate his own cause and waive his appeals, the PCRA court appointed court psychiatrist Dr. O'Brien to conduct a psychiatric evaluation of Heidnik. The PCRA court also permitted both the Commonwealth and Appellant to have their own mental health experts attend and participate in the psychiatric evaluation of Heidnik.[5] Following the joint psychiatric evaluation of Heidnik, each of the mental health experts issued a report and testified before the PCRA court concerning their respective findings and opinions. In addition, the PCRA court heard some testimony from Heidnik himself. Thereafter, on April 27, 1999, the PCRA court issued an oral ruling in which it concluded that Heidnik was competent to litigate his own cause and waive his appellate rights, and therefore, that Appellant lacked standing to bring a PCRA petition on Heidnik's behalf as his next friend. On May 12,

4. We once again express our concern that the CLEADA attorneys would appear to have a conflict of interest in representing Maxine Davidson White if, during their previous representation of Gary Heidnik, he instructed them not to file any appeals. *See* Rule 1.9(a) of the Pennsylvania Rules of Professional Conduct. Although such a conflict could be an additional basis for a court to disallow a particular individual or attorney to initiate or participate in proceedings to establish a condemned prisoner's incompetency to litigate his own cause, we decline to do so here.

5. Dr. Sadoff participated in the evaluation of Heidnik on behalf of the Commonwealth, while Dr. Bernstein and Dr. Blumberg participated in the evaluation on behalf of Appellant.

1999, the Governor issued a new warrant for Heidnik's execution. Appellant's instant appeal followed.

On appeal, Appellant raises numerous claims of error for this Court's review. First, Appellant presents several challenges to the validity of the PCRA court's determination that Appellant did not have standing to file a PCRA petition on Heidnik's behalf as his next friend because Heidnik was competent to litigate his own cause and forego seeking appellate relief. In addition, Appellant raises seventeen substantive PCRA issues concerning Heidnik's trial. Each of Appellant's claims challenging the validity of the proceedings in the PCRA court are considered below. However, as we find that the PCRA court properly determined that Appellant lacks standing to file a PCRA petition on Heidnik's behalf, we do not reach the seventeen substantive PCRA issues raised by Appellant.

■ Appellant's first claim is that the following statement made by Judge Poserina indicates that he improperly relied on off-the-record discussions with his daughter and other doctors in deciding that Heidnik is competent to litigate his own cause and waive his appellate rights:

No, I reviewed every document submitted to me and you can take a look over there, it's about a foot thick, and I read it more than once just to understand it. What you'll also need to know is my daughter is a psychiatrist, and in evaluating the testimony here, I was educated a little bit by just off-the-record conversations not only with my daughter but other doctors, and I have come to independent judgments based on the record and I believe I have the experience and capacity to correctly decide, which I did.

N.T., 4/27/99, at 41–2.

Interpreting Judge Poserina's above comment in a light most favorable to her claim, Appellant characterizes the judge's conversations with his daughter and other doctors as occurring in connection with his determination of Heidnik's competency to litigate his own cause. The record, however, belies Appellant's contention in this regard. In the above-

cited portion of the record, Judge Poserina explicitly states that he came to an independent judgment regarding Heidnik's competency to litigate his own cause and waive his appellate rights based on the record before him. In addition, we believe that Judge Poserina's comment regarding his conversations with his daughter and other doctors makes clear that those conversations took place prior to the commencement of the instant case, and were completely unrelated to the matter at hand.[6] In short, Judge Poserina's above-cited comment indicates that his understanding of the competency issue before him was aided "a little bit" by the prior unrelated conversations, but that he came to an independent judgment regarding Heidnik's competency based solely on the record before him.

Thus, we find that Appellant has failed to establish that Judge Poserina improperly relied on extra-judicial conversations with non-parties in ruling that Heidnik is competent to litigate his own cause. In addition, this Court is not inclined to countenance a rule that the judges of this Commonwealth must ignore the general knowledge that they bring to the bench with them. Accordingly, Appellant is not entitled to relief based on this claim.

▆ Next, Appellant contends that the PCRA court abused its discretion and violated her right to due process by appointing Dr. O'Brien to conduct a psychiatric evaluation of Heidnik, because Dr. O'Brien demonstrated a clear bias in favor of the Commonwealth. In addition, Appellant argues that the PCRA court committed reversible error by finding Dr. O'Brien's testimony to be credible. We disagree with both contentions.

6. Judge Poserina has filed a supplemental opinion to this Court explaining that his conversations with his daughter and other doctors preceded the instant case by many years, and that he never discussed the instant case with any doctor other than those who testified before him. Appellant subsequently filed a supplemental pleading objecting to, and moving to strike, Judge Poserina's supplemental opinion. In her supplemental pleading, Appellant argues that Judge Poserina's supplemental opinion is tantamount to an "advocate's brief" for the Commonwealth, and that by filing the opinion, Judge Poserina violated Canons one, two and three of the Code of Judicial Conduct. We hereby deny Appellant's motion to strike Judge Poserina's supplemental opinion, as Appellant's contention that the opinion somehow evidences a bias towards the Commonwealth is meritless.

■ It is within every trial judge's sound discretion to call and examine witnesses of its own accord. *See Commonwealth v. DiPasquale,* 424 Pa. 500, 504, 230 A.2d 449, 450 (1967). Therefore, Judge Poserina's decision to appoint Dr. O'Brien as the PCRA court's expert to conduct an evaluation of Heidnik will not be disturbed absent an abuse of discretion.

Judge Poserina initially appointed Dr. O'Brien as a court expert during Appellant's 1997 state court proceedings, and directed him to conduct a psychiatric evaluation of Heidnik in order to assist the court in determining whether Heidnik was competent to face execution. Following Appellant's 1997 proceedings before Judge Poserina, federal district court judge Franklin S. Van Antwerpen directed Dr. O'Brien to again testify regarding his psychiatric evaluation of Heidnik. After Appellant filed the instant PCRA petition on Heidnik's behalf, Judge Poserina again appointed Dr. O'Brien as a court expert, and directed him to conduct another psychiatric evaluation of Heidnik. However, this time Judge Poserina used Dr. O'Brien's evaluation of Heidnik to assist him in determining whether Heidnik was competent to litigate his own cause and waive his appellate rights. When the PCRA court issued its ruling in the instant matter on April 27, 1999, it found credible Dr. O'Brien's testimony regarding his psychiatric evaluation of Heidnik and the opinions that he had formed concerning Heidnik's condition.

In support of her contention that the PCRA court abused its discretion by appointing Dr. O'Brien as a court expert, Appellant asserts that Dr. O'Brien appeared as a Commonwealth witness at the 1997 federal district court proceedings before Judge Van Antwerpen, and that he sat at the Commonwealth's table in order to aid the Commonwealth in cross-examining Appellant's expert witnesses. The Commonwealth counters Appellant's assertion that Dr. O'Brien was a witness for the Commonwealth during the federal district court proceedings by pointing out that he was directed to appear and testify at those proceedings by Judge Van Antwerpen. The Commonwealth also notes that Dr. O'Brien is an employee of the Court

of Common Pleas, and was equally available to discuss the case with either side.

Boiled down to its essence, Appellant's instant claim that the PCRA court abused its discretion by appointing Dr. O'Brien as a court expert is based solely on the fact that Dr. O'Brien assisted the Commonwealth's attorneys in cross-examining Appellant's expert witnesses during the 1997 litigation in federal district court. We do not find that Dr. O'Brien's conduct during the federal district court proceedings, in and of itself, would disqualify the PCRA court from considering appointing Dr. O'Brien to conduct a psychiatric evaluation of Heidnik. Furthermore, a review of the record reveals that several legitimate reasons support Judge Poserina's decision to appoint Dr. O'Brien as a court expert in the instant case. First, Judge Poserina noted that Dr. O'Brien provided an initial psychiatric evaluation of Heidnik during the 1997 litigation initiated by CLEADA, and was therefore in a unique position to identify and ascertain the gravity of any subsequent changes in his mental condition. N.T., 12/14/98, at 23–4. In addition, Judge Poserina recognized that Dr. O'Brien's dual background as a medical doctor and an attorney, his years of experience in the criminal system as a court psychiatrist, and the fact that he had been retained in the past as both an expert witness for the Commonwealth and for criminal defendants, made him exceptionally qualified to provide expert assistance to the judge in determining whether Heidnik was competent to litigate his own cause and waive his appellate rights. N.T., 4/27/99, at 36–7.

Our review of the record indicates that the PCRA court's decision to appoint Dr. O'Brien was reasonable under the circumstances. Therefore, we conclude that the PCRA court did not abuse its discretion by appointing Dr. O'Brien as a court expert to provide a psychiatric evaluation of Heidnik.[7]

7. In a related claim, Appellant argues that the Commonwealth committed prosecutorial misconduct by making material misrepresentations to the PCRA court concerning Dr. O'Brien's role during the 1997 federal district court proceedings. However, Appellant fails to point to even one specific alleged misrepresentation on the part of the Common-

■ With respect to Appellant's alternate contention that the PCRA court committed reversible error by finding Dr. O'Brien's testimony to be credible, it should be noted that in the past this Court has found that there is no justification for an appellate court, relying solely upon a cold record, to review the fact-finder's first-hand credibility determinations. *See Commonwealth v. Brown,* 538 Pa. 410, 438, 648 A.2d 1177, 1190 (1994)(citing *Commonwealth v. Farquharson,* 467 Pa. 50, 59–60, 354 A.2d 545, 550 (1976)). In addition, where a PCRA court's credibility determinations are supported by the record, they are binding on the reviewing court. *Commonwealth v. Abu–Jamal,* 553 Pa. 485, 514, 720 A.2d 79, 93 (1998)(citing *Commonwealth v. Beasley,* 544 Pa. 554, 565, 678 A.2d 773, 778 (1996)).

■ In arguing that the PCRA court should not have found Dr. O'Brien's testimony to be credible, Appellant again cites to Dr. O'Brien's role during the federal district court proceedings. Appellant also contends that Dr. O'Brien's testimony was inherently unreliable because he accepted Heidnik's self-diagnosis of bipolar disorder, and because he found that there was no connection between Heidnik's symptoms and his professed desire to waive PCRA review.

■ Initially, Appellant's contention that Dr. O'Brien accepted Heidnik's self-diagnosis of bipolar disorder is not borne out by the record. Rather, the record indicates that Heidnik told Dr. O'Brien that he had a bipolar disorder, and, based on his extensive knowledge of Heidnik's mental health history, Dr. O'Brien agreed that it was a reasonable diagnosis for him. N.T., 3/1/99, at 70–71. In addition, Appellant's mere subjective disagreement with Dr. O'Brien's medical opinion that

wealth concerning Dr. O'Brien's role during the 1997 federal district court proceedings. We find that Appellant's claim of prosecutorial misconduct is patently meritless, and would direct the attorneys for Appellant to carefully consider their ethical obligations under Rule 3.1 of the Pennsylvania Rules of Professional Conduct, which states that a lawyer "shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous", before again raising such a serious allegation in such a cavalier manner.

there was no connection between Heidnik's symptoms and his professed desire to forego seeking PCRA review in no way affects the reliability of Dr. O'Brien's testimony. Finally, we do not believe that Dr. O'Brien's role during the federal district court proceedings precluded the PCRA court from finding his testimony to be credible.

As noted above, the PCRA court found that Dr. O'Brien possessed unique experience and qualifications, owing in large part to his dual background as a medical doctor and an attorney, plus his years of experience in the criminal justice system as a court psychiatrist. In addition, the PCRA court, as the fact-finder, had the opportunity to listen to Dr. O'Brien's testimony and observe his demeanor and attitude on the witness stand. Having done so, the PCRA court concluded that Dr. O'Brien's opinions "were objective on the issues before the court", and that he "was receptive to all questions on both sides and open in his responses." N.T., 4/27/99, at 37. Based on these facts, we find that the PCRA court's credibility determination concerning Dr. O'Brien's testimony is clearly supported by the record. Thus, Appellant is not entitled to relief based on this claim.

Appellant's next claim is that this Court cannot rely on the PCRA court's determination that Heidnik is competent to litigate his own cause because neither Dr. O'Brien nor Dr. Sadoff, on whose opinions the PCRA court relied, applied the correct legal standard in assessing Heidnik's competency. We disagree.

The goal of a judicial inquiry into a defendant's competency under *Whitmore v. Arkansas* as interpreted by this Court is to determine whether the defendant is incompetent to appear on his own behalf and litigate his own cause due to mental incapacity, lack of access to court or other similar disability. *See Bronshtein,* 557 Pa. at 551–56, 729 A.2d at 1105–06; *In re Heidnik,* 554 Pa. at 183–85, 720 A.2d at 1020. The propriety of such an inquiry is not dependent upon the use of certain magic words to describe the defendant's competency or lack thereof, but instead requires that the fact-finder

make a conscientious effort to determine whether the defendant is capable of making a rational decision to forego the potential avenues of appeal that are available to him.

As noted above, the PCRA court directed Dr. O'Brien to conduct a psychiatric evaluation of Heidnik in order to assist it in determining whether Heidnik was competent to litigate his own cause and waive his appellate rights. In addition, the PCRA court permitted Appellant and the Commonwealth to have their own experts attend and participate in Dr. O'Brien's psychiatric evaluation of Heidnik. At the evaluation, Appellant's experts, Dr. Blumberg and Dr. Bernstein, were given every opportunity to ask any questions of Heidnik that they wished. Following the evaluation, Dr. Blumberg and Dr. Bernstein produced reports evidencing their opinion that Heidnik was not competent to make a rational decision to waive his appellate rights. In contrast, Dr. O'Brien and the Commonwealth's expert, Dr. Sadoff, issued reports indicating that they believed that Heidnik was capable of making a rational decision to waive his appellate rights. All four experts subsequently testified in open court concerning the substance of their reports and their respective opinions as to Heidnik's competency to make a rational decision to forego the avenues of appeal available to him.

The record clearly reveals that the expert testimony offered by Dr. O'Brien and Dr. Sadoff directly impacted upon the question of whether Heidnik was competent to litigate his own cause and waive the potential avenues of appeal available to him. Therefore, the PCRA court was fully entitled to utilize Dr. O'Brien's and Dr. Sadoff's expert testimony and reports to assist it in determining whether or not Appellant had met her burden of establishing that Heidnik was not competent to litigate his own cause and waive his appellate rights. Accordingly, this claim fails.

Next, Appellant argues that the PCRA court never made an independent ruling concerning Heidnik's competence and Appellant's assertion of next friend standing, because the

court simply "rubber-stamped" orders prepared by the district attorney. This claim lacks merit.

The PCRA court issued its ruling in the instant matter orally, on the record, on April 27, 1999. *See* N.T., 4/27/99, at 36–43. Appellant contends that, in issuing its ruling, the PCRA court paraphrased language contained in a document filed by the Commonwealth and entitled "Commonwealth's Proposed Court Findings." However, Appellant has failed to provide this Court with a copy of the Commonwealth's "Proposed Court Findings" to compare against the PCRA court's oral ruling. In addition, our review of the PCRA court's oral ruling indicates that the PCRA court first made its own determinations concerning the weight it accorded to the various experts' testimony, and then came to its own conclusion regarding Heidnik's competency to litigate his own cause and make a voluntary, knowing, intelligent, and rational decision to forego the avenues of appeal available to him. Therefore, Appellant is not entitled to relief based on this claim.

Appellant's next claim is that the PCRA court conducted a defective waiver colloquy, and that Heidnik's waiver of his right to pursue relief pursuant to the PCRA was not voluntary, knowing, and intelligent. We disagree.

In support of her claim, Appellant argues that in order for the PCRA court to have properly determined that Heidnik was competent to litigate his own cause and waive his appellate rights under *Whitmore v. Arkansas,* 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990), it was first required to conduct an in-depth on-the-record colloquy of Heidnik to ensure that he understood the appellate rights that he was foregoing, and that he truly and voluntarily wished to give up those rights. Because such a colloquy did not occur during the course of the competency proceedings in the PCRA court, Appellant contends that the case should be remanded for a hearing on this issue.

Appellant's argument turns the reasoning of *Whitmore* on its head. In order for Appellant to establish that she had standing to file a PCRA petition on Heidnik's behalf as his next friend, Appellant bore the burden of proving that Heidnik

was unable to litigate his own cause due to mental incapacity. *See Whitmore*, 495 U.S. at 164, 110 S.Ct. 1717. With that in mind, the PCRA court granted Appellant access to Heidnik's records, and afforded Appellant the opportunity to have her mental health experts, Dr. Blumberg and Dr. Bernstein, conduct a joint psychiatric evaluation of Heidnik alongside the court's expert, Dr. O'Brien, and the Commonwealth's expert, Dr. Sadoff. Following their joint psychiatric evaluation of Heidnik, each of the four mental health experts who evaluated Heidnik issued reports and testified before the PCRA court concerning their findings. In addition, each of the four experts testified as to their opinions regarding Heidnik's competency to litigate his own cause and make a knowing, intelligent, voluntary and rational decision to waive his appellate rights. Finally, Heidnik himself testified before the PCRA court that his long-standing resolve to abandon all further appeals had not changed. N.T., 3/1/99, at 11.

We are not persuaded by Appellant's argument that the PCRA court could not properly determine whether Heidnik was competent to litigate his own cause and waive his appellate rights under *Whitmore* unless it first conducted an in-depth, on-the-record colloquy of Heidnik to ensure that he understood the appellate rights that he was foregoing and that he truly and voluntarily wished to give up those rights. To the contrary, we find that the record developed by the PCRA court formed a more than sufficient basis for its ultimate determination that Appellant had failed to establish that Heidnik was incompetent to litigate his own cause and waive his appellate rights. Therefore, Appellant is not entitled to relief based on this claim.

Next, Appellant claims that Judge Poserina, who presided over the PCRA court proceedings, violated her right to a full and fair hearing and rendered his own rulings inherently unreliable by denying her recusal motion. This claim is meritless.

During the proceedings in the PCRA court, Appellant filed a motion asking Judge Poserina to recuse himself because he had previously evidenced a fixed bias against defendants

seeking post-conviction review of their death sentences. Judge Poserina subsequently denied the motion in open court on December 14, 1998. On appeal, Appellant argues that Judge Poserina's refusal to grant the recusal motion rendered the proceedings below inherently unreliable.

The following relevant standards for recusal were recently set forth by this Court in *Commonwealth v. Abu–Jamal,* 553 Pa. 485, 720 A.2d 79 (1998):

It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. *Rizzo v. Haines,* 520 Pa. 484, 512–513, 555 A.2d 58, 72 (1989); *Commonwealth v. Miller,* 541 Pa. 531, 664 A.2d 1310 (1995). As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. *Commonwealth v. Travaglia,* 541 Pa. at 143–145, 661 A.2d at 370, citing *Goodheart v. Casey,* 523 Pa. 188, 565 A.2d 757 (1989). In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. *Goodheart v. Casey,* 523 Pa. 188, 201–203, 565 A.2d 757, 764 (1989). Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overturned on appeal but for an abuse of discretion. *Id.* at 199–201, 565 A.2d at 763. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent. *Reilly v. SEPTA,* 507 Pa. 204, 221–223, 489 A.2d 1291, 1300 (1985).

*Id.* at 507, 720 A.2d at 89.

It is Appellant's burden to establish that Judge Poserina abused his discretion by denying her recusal motion. Appellant has clearly failed to meet this burden.

 In support of her instant claim of bias, Appellant contends that Judge Poserina improperly denied stays of execution to at least four capital defendants seeking collateral review of their sentences of death pursuant to the PCRA. In addition, Appellant argues that Judge Poserina has regularly adopted the proposed orders submitted by the Commonwealth, and has made comments evidencing a clear bias against capital defendants seeking PCRA review. Finally, Appellant argues that Judge Poserina's conduct during the course of the proceedings below establish his fixed bias against capital defendants seeking PCRA review.

Having reviewed Appellant's allegations of bias, we are unpersuaded that Judge Poserina abused his discretion by denying the motion for recusal. Although in the past Judge Poserina may have voiced his displeasure with what he perceived to be eleventh-hour PCRA petitions designed solely to delay execution, we are not convinced that his comments evidence a fixed bias against all capital defendants seeking PCRA review. Rather, Judge Poserina's comments cited by Appellant concern specific PCRA petitions that the judge found lacked merit. In addition, our review of the record below reveals that Judge Poserina presided over the proceedings in a fair and impartial manner, and gave Appellant every reasonable opportunity to establish her entitlement to standing to file a PCRA petition on Heidnik's behalf as his next friend. Accordingly, we conclude that Judge Poserina did not abuse his discretion by denying Appellant's recusal motion.

 Next, Appellant claims that the PCRA court denied her meaningful access to the courts by refusing to provide her with a complimentary copy of the notes of testimony for purposes of preparing her post-hearing memorandum of law because she is indigent.[8] We disagree.

8. Although Appellant asserts that her indigency has never been contested, we note that Appellant fails to point to any portion of the record below where the PCRA court issued specific findings concerning her purported indigency. However, since Appellant's purported indigency does not affect our disposition of her instant claim, we will assume for purposes of this appeal that Appellant is indeed indigent.

■ It is well-settled that "[i]n order to assure that a [criminal] defendant's right to appeal will not be an empty, illusory right, we require that he or she be furnished a full transcript or other equivalent picture of the trial proceedings." *Commonwealth v. Shields,* 477 Pa. 105, 108, 383 A.2d 844, 846 (1978). However, Appellant is not an indigent criminal defendant appealing from his or her own conviction. Rather, Appellant is a third party who unsuccessfully sought standing to file a PCRA petition on behalf of Heidnik as his next friend. Appellant presents no persuasive argument or case law in support of her novel position that indigent third parties who unsuccessfully seek standing to file a PCRA petition on behalf of a criminal defendant as his or her next friend are somehow entitled to free notes of testimony to facilitate their appeals. Accordingly, we find that Appellant is not entitled to relief based on this claim.

■ Appellant's final challenge to the validity of the competency proceedings below is that the PCRA court denied Gary Heidnik the assistance of counsel by refusing to disqualify his attorney, A. Charles Peruto, Jr., from participating in the proceedings as Heidnik's counsel. However, as Appellant lacks standing to challenge Peruto's representation of Heidnik, she is not entitled to relief based on this claim.

Appellant's instant claim is predicated on her contention that A. Charles Peruto, Jr.'s representation of Heidnik is tainted by an ongoing and egregious conflict of interest. We need not consider the merits of Appellant's contention, however, as she is in no position to challenge the validity of Heidnik's choice of attorneys. As the PCRA court properly determined that Appellant lacks standing to file a PCRA petition on Heidnik's behalf as his next friend, Appellant cannot have standing on appeal to this Court to contest the PCRA court's refusal to override Heidnik's decision to continue to be represented by Mr. Peruto.[9]

9. Appellant has filed several motions following the submission of her brief to this Court, including a motion requesting that the entire Philadelphia District Attorney's Office be recused because District Attorney Lynne Abraham was the trial judge who presided over Heidnik's

Appellant also raises seventeen substantive PCRA issues for this Court's review. However, as we have determined that the PCRA court properly determined that Appellant lacks standing to file a PCRA petition on Heidnik's behalf as his next friend, we need not consider the merits of the substantive PCRA issues raised by Appellant. Accordingly, the Order of the Court of Common Pleas dated April 27, 1999 denying Appellant next friend standing is affirmed.

Justice CASTILLE did not participate in the consideration or decision of this case.

### ORDER

PER CURIAM:

**AND NOW,** this 23rd day of June, 1999, the request for a stay of execution is denied.

Justice CASTILLE did not participate in the consideration or decision of this case.

trial, and a motion which essentially rehashes Appellant's claim that Judge Poserina evidenced a bias against her and in favor of the Commonwealth, and that therefore she is entitled to a new hearing before a different judge. As these motions fail to raise any meritorious issues for this Court's consideration, they are hereby denied.