J-S31024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRIAN M. LINGAFELT, | : | |
| | : | |
| Appellant | : | No. 1340 WDA 2016 |

Appeal from the PCRA Order August 18, 2016
In the Court of Common Pleas of Blair County
Criminal Division at No(s):  CP-07-CR-0002539-2009

BEFORE: PANELLA, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED JULY 13, 2017**

Appellant, Brian M. Lingafelt, appeals from the August 18, 2016 Order denying his first Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46, and challenges, *inter alia*, the effectiveness of trial counsel.  After careful review, we affirm.

At issue in the instant appeal is the manner in which Appellant's co-conspirator-turned-wife, Jessica Roe ("Roe"), waived her spousal privilege and testified against him at trial.  The parties are familiar with the details of this case, and the trial court's Pa.R.A.P. 1925(a) Opinion discusses the circumstances surrounding her testimony in detail with appropriate references to the record.  **See** Trial Court Opinion, filed 8/18/16, at 9-17. Therefore, we briefly summarize those circumstances, as gleaned from the certified record, as follows.

On November 9, 2006, agents of the Blair County Adult Probation and Parole Office went to the residence of Roe, Appellant's then-girlfriend, to serve her with an arrest warrant. Appellant was present at the time, and let agents into the apartment. Inside the apartment, agents found methadone, cocaine, marijuana, drug paraphernalia, a handgun, a scale, plastic baggies, a safe, money, and other evidence that agents believed was indicative of narcotics trafficking. Appellant and Roe were both arrested and charged with numerous drug-related offenses, including charges that they conspired with one another to deliver the controlled substances found in the apartment. At some point subsequent to their arrests, Appellant and Roe got married.

Roe pled guilty to charges that she conspired with Appellant to possess methadone, cocaine, and marijuana with the intent to deliver. The trial court sentenced her to 3½ to 7 years of incarceration. When Roe reported to the prison to begin serving her sentence, prison staff caught her attempting to bring contraband into the facility, and Roe was charged with additional offenses.[1]

Appellant elected to proceed by way of a jury trial. Appellant was represented by Joel Peppetti, Esquire. Peter Weeks, Esquire, prosecuted the case on behalf of the Commonwealth.

---

[1] The certified record in the instant case does not contain the exact charges pending against Roe at the time of Appellant's trial.

At the close of the Commonwealth's case, Attorney Weeks informed the trial court that there was an unresolved question regarding whether Roe would offer limited testimony against Appellant, or instead invoke Pennsylvania's spousal privilege.[2] Attorney Peppetti noted that Roe had an absolute right not to testify under spousal privilege, and told the trial court: "I just wanna make sure that she is aware of that right. If she has a lawyer, I wanna make sure that she's been advised." N.T., 2/28/11, at 151.

The trial court called a brief recess, wherein Attorney Weeks, Attorney Peppetti, and Agent Randy Feathers met with Roe in a side room off of the courtroom. Attorney Weeks advised Roe that she had an absolute right not to testify against Appellant, but asked that she consider testifying to: (i) her name; (ii) the fact that she was married to Appellant; and (iii) the fact that she had plead guilty to conspiracy charges.

The Commonwealth negotiated an agreement in exchange for this testimony. Initially, Agent Feathers offered to amend Roe's 3½ to 7 year sentence on the conspiracy charges in order to make her RRRI eligible. Attorney Weeks was unwilling to agree to those terms, however, and noted that, due to the time elapsed, the trial court lacked authority to amend her original Judgment of Sentence. Instead, Attorney Weeks offered to take her

_____

[2] Under the laws of this Commonwealth, "in a criminal proceeding a person shall have the privilege, which he or she may waive, not to testify against his or her then lawful spouse." 42 Pa.C.S. § 5913.

cooperation into consideration on the new charges related to bringing contraband into the prison. Roe then spoke to her own attorney, Philip Robertson, Esquire, before agreeing to give limited testimony against Appellant.

When the trial court reconvened, Attorney Weeks provided the trial court with a summary of the side-room discussions. Attorney Weeks emphasized that he had agreed that Roe would receive consideration on her new charges for cooperation in the instant case, and that he had refused to agree to modify her sentence for the conspiracy charges.

The Commonwealth then called Roe to the stand, where she testified to three things: (i) her name; (ii) the fact that she was married to Appellant; and (iii) the fact that she had pled guilty to "conspiring with [Appellant] to possess methadone, cocaine[,] and marijuana with the intent to deliver[.]" *Id.* at 156-57.

On cross-examination, Attorney Peppetti asked Roe about her pending charges. Roe admitted that she was facing new charges for bringing "anxiety pills" into the prison, and that those pending charges were punishable by a mandatory minimum sentence of two to four years of imprisonment. *Id.* at 158-59. She further testified that she was only testifying against Appellant because the Commonwealth had offered to give her "favorable consideration on [the] new charges[.]" *Id.* at 159.

The jury convicted Appellant of Possession of a Controlled Substance with Intent to Deliver ("PWID") methadone; Possession of methadone, cocaine, and marijuana; Possession of Drug Paraphernalia; and Criminal Conspiracy to commit PWID. The trial court sentenced Appellant to an aggregate term of 19 to 38 years of incarceration, which included two five-year mandatory minimum terms due to Appellant's possession of a firearm and the weight of the methadone.

Appellant filed a timely appeal, and this Court affirmed Appellant's Judgment of Sentence on February 8, 2013. *Commonwealth v. Lingafelt*, No. 1518 WDA 2011, (Pa. Super. filed February 8, 2013) (unpublished memorandum). Appellant filed a Petition for Allowance of Appeal, which our Supreme Court denied. *Commonwealth v. Lingafelt*, 72 A.3d 601 (Pa. 2013).

On July 11, 2014, Appellant filed a timely *pro se* PCRA Petition. Appellant subsequently retained private counsel, who filed a series of Amended PCRA Petitions.

The PCRA court held an evidentiary hearing on May 6, 2016. On August 18, 2016, the PCRA court entered an Order granting Appellant's PCRA Petition in part, finding that the trial court imposed unconstitutional mandatory minimum sentences in light of *Alleyne v. United States*, 133

S.Ct. 2151 (2013).[3] The PCRA court vacated Appellant's Judgment of Sentence, and ordered a new sentencing hearing. The PCRA court denied all of Appellant's other claims.

Appellant timely appealed, and all parties complied with Pa.R.A.P. 1925. On appeal, Appellant raises three issues.

> 1. Whether the Commonwealth committed prosecutorial misconduct in dealing with the issue of spousal privilege with Appellant's wife, Jessica Roe Lingafelt?
>
> 2. Whether the trial court erred and/or abused its discretion in its failure to conduct a colloquy and have Appellant's wife specifically waive spousal privilege under oath?
>
> 3. Whether trial counsel was ineffective for failing to fully raise and argue the issue of spousal privilege in regards to Appellant's wife, Jessica Roe Lingafelt?

Appellant's Brief at 4.

When reviewing the denial of PCRA Petition, "we examine whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014) (internal quotation marks and citation omitted). We grant great deference to the findings of the PCRA court, and "these findings will not be disturbed unless they have no support in the certified record." *Commonwealth v. Wilson*, 824 A.2d 331, 333 (Pa. Super. 2003). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light

---

[3] Appellant's direct appeal was still pending before our Supreme Court when *Alleyne* was decided.

most favorable to the prevailing party at the trial level." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (citation omitted). Moreover, "[w]here a PCRA court's credibility determinations are supported by the record, they are binding on the reviewing court." ***Commonwealth v. White***, 734 A.2d 374, 381 (Pa. 1999). With this standard in mind, we address each of Appellant's claims.

### Prosecutorial Misconduct and Trial Court Error

In his first two claims, Appellant avers that Attorney Weeks committed prosecutorial misconduct and that the trial court erred when both permitted Roe to testify against Appellant without conducting an on-the-record colloquy of her decision to waive spousal privilege. Appellant did not attempt to raise these claims at trial or on direct appeal and they are, therefore, waived.[4]

Section 9543(a)(3) of the PCRA provides that, to be eligible for relief under the statute, a petitioner must plead and prove that "the allegation of error has not been previously litigated or waived." 42 Pa.C.S. § 9543(a)(3). "An issue is waived if [a petitioner] could have raised it but failed to do so before trial, at trial, . . . on appeal or in a prior state post[-]conviction proceeding." ***Commonwealth v. Robinson***, 82 A.3d 998, 1005 (Pa. 2013) (quotation marks omitted); 42 Pa.C.S. § 9543(a)(3). ***But see***

---

[4] Appellant has waived his first two claims on identical grounds. We, therefore, address each of these claims together.

*Commonwealth v. Oliver*, 128 A.3d 1275, 1281-82 (Pa. Super. 2015) (declining to find petitioner's claim—that the Department of Corrections placed additional conditions on his parole in violation of his negotiated plea agreement—waived for failure to raise it on direct appeal because at the time he filed his direct appeal he could not have known that the Department of Corrections would later impose conditions on his parole and, therefore, he could not have raised the claim on direct appeal).

In the instant case, Appellant's first two claims were apparent at the time he filed his direct appeal. He was present in the courtroom when Roe testified without either the trial court or Attorney Weeks conducting a formal colloquy of her decision to waive her spousal privilege. Appellant was also present in the courtroom when Attorney Weeks informed the trial court that Roe had attempted to negotiate a modification of her 3½ to 7 year sentence, but that Attorney Weeks had only been willing to offer her consideration on her pending charges in exchange for her testimony against Appellant. Finally, Appellant was present in the courtroom when Roe testified against him.

Appellant did not object to Roe's testimony, nor did he request that the trial court colloquy Roe. Moreover, although he filed a direct appeal, Appellant did not raise the instant allegations of prosecutorial misconduct or trial court error in that appeal. We, therefore, conclude that Appellant waived his first two contentions.

**Ineffective Assistance of Counsel**

In his final issue, Appellant avers that trial counsel was ineffective for "failing to adequately fully raise and argue the issue of spousal privilege after the recess and court had reconvened." Appellant's Brief at 15. Specifically, Appellant faults trial counsel for failing to "demand a colloquy of the witness on the record regarding spousal privilege." *Id.* at 17.

In analyzing claims of ineffective assistance of counsel, we presume that counsel was effective unless the PCRA petitioner proves otherwise. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). In order to succeed on a claim of ineffective assistance of counsel, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice. *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). Appellant bears the burden of proving each of these elements, and his "failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009) (citation omitted).

To demonstrate prejudice, a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *accord Commonwealth v. Cox*,

983 A.2d 666, 678 (Pa. 2009). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *See Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010). Finally, "when it is clear that the party asserting a claim of ineffectiveness has failed to meet the prejudice prong, the claim may be dismissed on that basis alone without a determination of whether the first two prongs of the ineffectiveness standard have been met." *Commonwealth v. Zook*, 887 A.2d 1218, 1227 (Pa. 2005) (citation omitted).

In the instant case, Appellant has failed to meet his burden of establishing prejudice. His only attempt at demonstrating prejudice is his bald assertion that "[a]llowing [Roe] to testify clearly prejudiced . . . Appellant" because she "linked this Appellant as a Co-Conspirator in this case." Appellant's Brief at 17. Appellant wholly fails to establish how counsel's request for an on-the-record colloquy of Roe would have prevented her from testifying. At most, a colloquy of Roe would have confirmed (i) that Roe was aware of her right to refuse to testify under Pennsylvania's spousal privilege; and (ii) that she was knowingly and voluntarily waiving that right in return for consideration from the Commonwealth on her pending charges.

Moreover, during her trial testimony Roe stated that she chose to testify in hopes of receiving consideration from the Commonwealth on her

new charges. At the PCRA hearing, Attorney Peppetti, Attorney Robertson, and Roe all testified that Roe was aware of her right to claim spousal privilege and understood that she had "the absolute right not to testify[.]" N.T., 5/6/16, at 38-39; *see also id.* at 53, 68.

It is clear that Roe made a knowing and voluntary waiver of her right to claim spousal privilege. Given these facts, we cannot see how a formal colloquy would have changed the outcome in this case.

Having concluded that Appellant waived his first two claims, and failed to demonstrate prejudice on his remaining claim, we affirm the PCRA court's August 18, 2016 Order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/13/2017