J-S53045-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRUCE FRAZIER | : | |
| | : | |
| Appellant | : | No. 3290 EDA 2019 |

Appeal from the PCRA Order Entered October 24, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-1200661-1998

BEFORE:  SHOGAN, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED:  APRIL 26, 2021**

Bruce Frazier appeals the order entered by the Court of Common Pleas of Philadelphia County (PCRA court) denying his petition for relief under the Post-Conviction Relief Act (PCRA).[1]  In 1999, following a jury trial, Frazier was convicted of first-degree murder[2] and other firearm-related offenses which are not at issue.  As to the murder count, he was sentenced to life imprisonment.  In his appeal, Frazier claims that he is entitled to a new trial on that charge based on the recantation of an eyewitness.  He also contends that he must be

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. § 2502(a).

resentenced because he was under the age of 18 at the time of the murder, making the life term unconstitutional.  We affirm.

**I.**

The relevant case facts are taken from the PCRA court's opinion, which provides as follows:

> Veronica Spencer testified that on November 1, 1998, at approximately 1:30 p.m., she saw [Frazier] standing in the Sartain Courtyard, located in the Richard Allen Homes, with Jamal Blackwell, the decedent, and four (4) other males.  Ms. Spencer was walking through the courtyard on her way to the store.  Upon her return, she walked through the courtyard, and witnessed [Frazier] "in [the decedent's] face."  [Frazier] then hit [the] decedent on the left side of his face with gun.  [Frazier's] cousin, "Fmk," tried to separate the two and attempted to calm [Frazier] down.  Meanwhile, the decedent said to [Frazier], "Go ahead, man, go ahead.  Why are you still talking, that is the last time."  This prompted [Frazier] to begin shooting.  Once [Frazier] started shooting, the decedent started running, although he had been shot and had a difficult time getting away.  He was able to make his way to cover, hiding behind a metal box that was in the courtyard.  Ms. Spencer testified that [Frazier] fired seven (7) or eight (8) shots.  After [Frazier] fired at the decedent he ran away with two or four others that were in the courtyard.
>
> Antoine Ellis testified that he first saw [Frazier] on November 1, 1998 at 12th and Parrish Streets, also located in the Richard Allen Homes.  Mr. Ellis was with the decedent and Dennis Wilson when [Frazier] approached him.  The three men shook hands with [Frazier] and spoke to him briefly; then [Frazier] left.  A little while later, [Frazier] came back with two (2) other people, "Meat" and "Took."  [Frazier] and [the] decedent spoke about the decedent's brother; [Frazier] stated that the decedent's brother tried to climb into the window the night before.  [Frazier] and the decedent began to argue.  Then, [Frazier] pulled out a gun and hit decedent in the face with it.  Decedent then challenged [Frazier], stating, "Why don't you just give me a rumble?"  [Frazier] responded by stepping back and firing his gun into the ground.  Mr. Ellis testified that at that point he got down on the ground and heard six (6) more gun shots.  When the gunfire ceased, Mr. Ellis got up to see

if the decedent was injured. He found the decedent lying between the metal cabinet and a wall.

Dennis Wilson testified that he was also present on November 1, 1998. He testified that [Frazier] accused the decedent's brother of being in [Frazier's] hallway the night before, and that [Frazier] thought that the decedent's brother was going to attempt to rob his house. The decedent told [Frazier] that if anything happened to his brother, he would have a fight with [Frazier]. Mr. Wilson testified that [Frazier] then left the area for about 10 minutes. [Frazier] returned with two (2) other people, "Meat" and "Pook." When [Frazier] returned, he spoke with decedent for a few minutes. [Frazier] stated that "something" would happen to the decedent's brother, and the decedent responded that if "something happened to his brother, something would happen to [Frazier]." [Frazier] then hit the decedent across the face with his gun and proceeded to shoot the decedent.

[Frazier] testified that on October 31, 1998, he returned home from a party at approximately 10:45 p.m. Upon his return home, he saw a woman from the neighborhood standing by the steps of his house and a man on the roof of his house, looking into the windows of the apartment. Although [Frazier] could not identify the person on the roof at the time, he later found out that it was Lamont Blackwell, the decedent's brother. [Frazier] decided that he needed to do something about this incident; he would talk to the decedent, who was his friend, about his brother because [Frazier] believed the decedent was the only person to whom Lamont would listen.

[Frazier] testified that when he began discussing the incident with the decedent [a day later], the discussion quickly elevated into an argument. The decedent stated, "If something happens to my brother, something will happen to you." As the argument continued, [Frazier] pulled out his gun and hit the decedent in the face with it. [Frazier] stated that he did this because he "felt like his life was in danger." After he hit the decedent, the decedent put his hands in his pockets, and [Frazier] shot at the ground. [Frazier] testified that when he fired, he saw the decedent spin around; he thought the decedent was going to pull out a gun. [Frazier] testified that he thought the decedent had a gun on him because he knew that the decedent had carried a gun in the past, although he admitted that he did not see decedent with gun that day. [Frazier] then testified that after he fired the initial shot at

the ground, he began to fire at the decedent. After he fired at the decedent, [Frazier] testified that he ran home.

Officer Peter Seabron of the Philadelphia Housing Authority Police was assigned to the Richard Allen Homes on November 1, 1998. At approximately 1:30 p.m. Officer Seabron heard a series of gunshots and proceeded to the area from where the sound of the shots came. When he arrived in the Sartain courtyard, he saw a group of people standing around a metal box in the courtyard and found Jamal Blackwell, the decedent, lying on the ground, losing consciousness. Officer Seabron called for an ambulance.

\* \* \* \*

Dr. Ian Hood, assistant deputy medical examiner for the City of Philadelphia, testified that he performed the autopsy on the decedent. Dr. Hood testified that there were three (3) gunshot wounds, all entering in the back of the decedent's body. One bullet entered in his back and lodged under a rib, remaining in the body, under the skin. The angle at which the bullet traveled through the body clearly indicated that the decedent was running at the time he was shot. Another bullet entered the back of the decedent's right thigh and exited through the front. A third bullet entered the top of decedent's left buttock, traveled through the tissue in his left thigh, and lodged in his left knee.

PCRA Court Opinion, 12/16/2019, at pp. 1-3 (quoting Trial Court Opinion, 6/28/1999, at pp. 2-6) (citations omitted).

The jury found Frazier guilty of first-degree murder and he was sentenced to a mandatory term of life imprisonment. *See* 42 Pa.C.S. § 9711; 18 Pa.C.S. § 1102(a). This Court affirmed the judgment of sentence. *See Commonwealth v. Frazier*, 1887 EDA 1999 (Pa. Super. September 12, 2000); *see also Commonwealth v. Frazier*, 781 A.2d 139 (Pa. 2001) (table) (denying allocator).

Frazier filed his first PCRA petition in 2013, *pro se*, followed by supplemental petitions in 2016, culminating with a counseled amended petition in 2018. He argued that his life sentence was unconstitutional because he was still a juvenile on the day of the shooting, having just turned 18 on that same date. **See Miller v. Alabama**, 567 U.S. 460, 465 (2012) (holding that it is unconstitutional for an individual to be sentenced to a mandatory term of life without parole if they were under the age of 18 at the time of the offense).

Frazier also sought a new trial on the grounds that an adverse trial witness (Antoine Ellis) had come forward to recant his testimony that the decedent was unarmed. Ellis had made new statements supporting Frazier's claim that he had acted in self-defense in response to the decedent's apparent intent to draw his own firearm.

The PCRA court held an evidentiary hearing on September 20, 2019, which was over 20 years after the subject shooting occurred. Ellis testified that the decedent was armed at the time of his fatal confrontation with Frazier and that he was known to carry a handgun. **See** PCRA Hearing Transcript, 9/20/2019, at pp. 9, 20-21.

According to Ellis, Frazier got into an argument with the decedent and pistol whipped him. Frazier then fired a warning shot at the ground as the two separated. It was only when the decedent turned around and reached for a gun at his waist that Frazier opened fire. **Id**. at p. 8.

Ellis testified in his direct examination that he never actually saw the decedent holding or carrying a weapon, but he claimed he noticed a gun lying next to him after he had fallen to the ground. Police never recovered the decedent's gun because another witness (Dennis Wilson) took it away before the police arrived. *Id*. at p. 9. On cross-examination, Ellis reversed himself, stating that he *did* see the decedent holding his own gun when "he pulled it out" in response to Frazier's warning shot into the ground. *Id*. at p. 23.[3]

To explain why he gave false testimony at the trial in 1999, Ellis stated that he was only 14 years old at the time of the shooting and he felt pressured by his neighbors and the police to give incriminating testimony against Frazier. Ellis also did not want Wilson to get into trouble for taking the decedent's gun. After Wilson died in a car accident years later in 2012 or so, Ellis decided to help Frazier by revealing to an investigator that he had lied at the murder trial when testifying that he had not seen the decedent with a weapon. Ellis gave this new statement in 2016.

The trial court denied Frazier's after-discovered evidence claim, finding that Ellis was not credible and determining that his revised account did not

---

[3] There appeared to be another inconsistency between the testimony Ellis gave in 2019 and the statement he made in 2016. In the statement, Ellis denied that he saw Frazier strike the decedent in the face with a gun. However, in his testimony in 2019, Ellis confirmed that Frazier did, in fact, hit the decedent with his weapon before any shots were fired. No explanation was given for the discrepancy.

support Frazier's self-defense claim even if taken as true. The trial court also declined to find that Frazier received an unconstitutional sentence, reasoning that as of the day of the shooting, he was no longer under the age of 18.

Frazier timely appealed, and the PCRA court entered a written opinion pursuant to Pa.R.A.P. 1925(a). In his brief, Frazier asserts two grounds:

1. Did the PCRA Court abuse its discretion in denying [Frazier] PCRA relief with respect to his after[-]discovered evidence claim regarding Antoine Ellis?

2. Did the PCRA Court abuse its discretion in denying [Frazier] PCRA relief with respect to his **Montgomery** and **Miller** claims where [Frazier] proved that the offense was committed on the day of his 18th birthday?

Appellant's Brief, at 2 (suggested answers omitted).

## II.

Frazier's first claim is that he is entitled to a new trial based on the recantation of Ellis, who now avers (contrary to his trial testimony in 1999) that the decedent was reaching for a weapon at the time Frazier fatally shot him. The PCRA court's denial of this claim must be affirmed if its factual findings are supported by the record and its legal conclusions are free from legal error. **See Commonwealth v. Hanible**, 30 A.3d 426, 438 (Pa. 2011).

## A.

The PCRA recognizes claims of after-discovered evidence as substantive grounds for relief as long as the conviction or sentence resulted from the unavailability of "exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been

introduced." 42 Pa.C.S. § 9543(a)(2)(vi). To assert a meritorious claim of after-discovered evidence, a PCRA petitioner must satisfy four elements:

(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

*Commonwealth v. D'Amato*, 856 A.2d 806, 823 (Pa. 2004); *Commonwealth v. Pagan*, 950 A.2d 270, 292 (Pa. 2008).[4]

While we find that Frazier can satisfy the first three elements, we agree with the PCRA court's legal conclusion that Ellis' testimony does not satisfy the fourth – that the new evidence would not have affected the trial verdict. The version of events that Ellis now testifies to does not, as a matter of law, support Frazier's claim that he acted in self-defense against the decedent.

Ellis has described a situation in which Frazier essentially provoked the incident by striking the decedent in the face with his gun, only to open fire before the decedent could defend himself. Ellis, therefore, identified Frazier

---

[4] Generally, a PCRA petition must be filed within one year from the date that the petitioner's judgment of sentence becomes final. *See* 42 Pa.C.S. § 9545(b)(1). If proven, an after-discovered evidence claim is excepted from the one-year deadline. The substantive claim of after-discovered evidence is distinct from the PCRA's time-bar exception for newly discovered facts, which does not require a showing that the evidence is exculpatory and would have changed the outcome of the trial. *See Commonwealth v. Bennett*, 930 A.2d 1264, 1270 (Pa. 2007) (clarifying the purely jurisdictional nature of Section 9545(b)(1)(ii)).

as the first aggressor, precluding him from prevailing at trial on a theory of self-defense.[5] Thus, the PCRA court properly ruled that the recantation of Ellis did not constitute evidence that could have resulted in a different trial verdict. *See Commonwealth v. Bond*, 819 A.2d 33, 49-50 (Pa. 2002) (affirming denial of after-discovered evidence claim where witness's recantation was not exculpatory).

### B.

Moreover, we find that the PCRA court did not abuse its discretion in denying Frazier's claim based on its factual findings and credibility determinations with respect to Ellis.

"[A]s a general matter, recantation evidence is notoriously unreliable, particularly where the witness claims to have committed perjury." *D'Amato*, 856 A.2d at 825 (quoting *Commonwealth v. Dennis*, 715 A.2d 404, 414

---

[5] A claim of self-defense has three elements: "(a) [that the defendant] reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that **the defendant was free from fault in provoking the difficulty which culminated in the slaying**; and (c) that the [defendant] did not violate any duty to retreat." *Commonwealth v. Mouzon*, 53 A.3d 738, 740 (Pa. 2012) (emphasis added) (quoting *Commonwealth v. Samuel*, 590 A.2d 1245, 1247-48 (Pa. 1991)). "[A]n imperfect self-defense claim is imperfect in only one respect-an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life. All other principles of justification under 18 Pa.C.S. § 505 must have been met[.]" *Commonwealth v. Rivera*, 982 A.2d 1211, 1225 (Pa. 2009). Thus, a defendant who has provoked the incident leading to the victim's death cannot defend against a murder charge with a claim of self-defense.

(Pa. 1998)). "[E]ven as to recantations that might otherwise appear dubious, the PCRA court must, in the first instance, assess the credibility and significance of the recantation in light of the evidence as a whole." **D'Amato**, 856 A.2d at 823.

If the PCRA court relies on record evidence to determine that a recantation is incredible, then the evidence fails to satisfy the fourth element of an after-discovered evidence claim, as it would not compel a different result at trial. **See Commonwealth v. Small**, 189 A.3d 961, 977 (Pa. 2018). "Where a PCRA court's credibility determinations are supported by the record, they are binding on the reviewing court." **Commonwealth v. White**, 734 A.2d 374, 381 (Pa. 1999) (citing **Commonwealth v. Abu-Jamal**, 720 A.2d 79, 93 (Pa. 1998)).

In this case, the PCRA court found Ellis to be an incredible witness based on his demeanor during questioning and inconsistencies in his recantation testimony at the evidentiary hearing. The PCRA court was also skeptical of Ellis' reasons for coming forward after so many years had passed from the time of trial in 1999.

The record supports the PCRA court's finding that Ellis gave conflicting testimony at the PCRA evidentiary hearing as to whether he saw the decedent carrying a weapon or threatening to shoot Frazier. Further, the four-year span between the death of Wilson and Ellis' statement in 2016 casts doubt on Ellis' explanation that he had delayed coming forward to hide Wilson's role in taking

the decedent's weapon. Finally, Ellis' credibility as a whole was undermined by his admission that he had perjured himself at Frazier's trial.

We must defer to the PCRA court's credibility determinations regarding Ellis because they are supported by the record. Thus, due to the above legal and factual deficiencies in Frazier's after-discovered evidence claim, the PCRA court did not err in denying it.

**III.**

Frazier's next claim is that he must be resentenced to a term of years because as a juvenile offender at the time of the shooting, he could not receive a mandatory life term. The United States Supreme Court held in *Miller* that it violates the Eighth Amendment's prohibition on cruel and unusual punishment to impose a mandatory life sentence on an offender who was "under the age of 18" at the time of the crime. *See Miller*, 567 U.S. at 465. The holding is grounded on the premise that due to their lack of life experience, incomplete cognitive development and greater prospects for reform, juveniles must be held less culpable and punished less severely than adult offenders. *See id*.

In *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), the Supreme Court clarified that *Miller* applies retroactively as to all mandatory life sentences imposed on juvenile offenders before *Miller* was decided. The pronouncement of a new constitutional right with retroactive applicability is an enumerated ground for PCRA relief, *see* 42 Pa.C.S. § 9545(b)(1)(iii)

(2016), as long as it is raised within 60 days from the date it could have been presented.[6]   Frazier timely filed his **Miller** claim within 60 days of **Montgomery's** publication.

However, while Frazier's claim was timely filed, we are bound to hold that he did not qualify as a juvenile offender as of the date on which the decedent was killed.  Frazier turned 18 years old on November 1, 1998, and the shooting took place at about 1:30 p.m. on the same date, so he was not "under the age of 18" as **Miller** requires.

In **Commonwealth v. Iafrate**, 594 A.2d 293 (Pa. 1991), our Supreme Court adopted the rule now in effect for calculating whether an individual is subject to the Juvenile Act and the jurisdiction of the juvenile court.  The Court held that "an individual becomes a year older on the day of his birthday and not the day before."  **Iafrate**, 594 A.2d at 295; **see also** 42 Pa.C.S. § 6302 (defining a child as "an individual who is under the age of 18").

By operation of the rule adopted in **Iafrate**, Frazier became 18 years old on the 18th anniversary of his birth, a day which fell on the same date as Frazier's offense.  Accordingly, for sentencing purposes, Frazier was no longer

---

[6] The PCRA has since been amended to allow for a filing window of one year from the date such a claim may be raised.  **See** 2018 Pa. Legis. Serv. Act 2018-146 (S.B. 915), effective December 24, 2018, § 2 and § 3.  Regardless, Frazier satisfied the 60-day deadline then in effect, as he filed the operative PCRA petition within 60 days from the date that **Montgomery** was decided.

under the age of 18 years old at the moment that day began. Since he was over the age of 18 when he fatally shot the decedent, Pennsylvania and federal law compel us to find **Miller** inapplicable and uphold the PCRA court's denial of Frazier's constitutional challenge.[7]

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/21

---

[7] Frazier argues that we have recognized a different method of computing age in **Commonwealth v. Furgess**, 149 A.3d 90, 94 (Pa. Super. 2016), where we remarked that **Miller** applies unless an offender is "older than 18" at the time of the offense. **See** Appellant's Brief, at 21-22. However, it is clear from the context exactly what we meant – that **Miller** relief is unavailable to individuals who had already turned 18 when the crime occurred – and to emphasize the point, we quoted **Miller** elsewhere in the decision, reiterating that "[t]he **Miller** decision applies to only those defendants who were 'under the age of 18 at the time of their crimes.'" **See Furgess**, 149 A.3d at 94 (quoting **Miller**, 132 S.Ct. at 2460).