J-A17044-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN JONES | : | |
| | : | |
| Appellant | : | No. 2278 EDA 2021 |

Appeal from the PCRA Order Entered November 5, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006302-2016,
CP-51-CR-0006303-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN JONES | : | |
| | : | |
| Appellant | : | No. 2279 EDA 2021 |

Appeal from the PCRA Order Entered November 5, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006302-2016,
CP-51-CR-0006303-2016

BEFORE: PANELLA, P.J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED NOVEMBER 17, 2022**

Appellant, John Jones, appeals from the order of the Court of Common

Pleas of Philadelphia that dismissed his first petition filed under the Post

_____

[*] Retired Senior Judge assigned to the Superior Court.

Conviction Relief Act ("PCRA").[1]  He challenges the denial of his claims requesting the recusal of the PCRA judge, asserting that his trial counsel provided ineffective assistance, and alleging the existence of newly discovered evidence.  Upon review, we affirm.

On direct review, we previously adopted the trial court's following summary of the facts of the case:

> On October 24, 2011, [Appellant's] brother, Shaquille Jones, was murdered on the 2600 block of Silver Street in Philadelphia.  While Shaquille Jones's murder was under investigation by the police, [Appellant] believed that a group of men from Hollywood Street in Philadelphia were responsible.  [Appellant] vowed to kill his brother's murderers once he was released from prison for an unrelated conviction.
>
> On the evening of March 8, 2016, Rasheen Jay Holden, Dionte Jones (also known as "D"), Don Smith (also known as "Pookie"), and Phillip Miller, were outside drinking and playing spades on the 2400 block of North Hollywood Street in Philadelphia.  While they were playing, [Appellant] walked up to the group and said, "Give that shit up.  Don't run, D."  Dionte Jones ran off, and [Appellant] began to fire shots at him.  In the meantime, the other men also attempted to flee.
>
> While Miller was trying to escape, [Appellant] began to fire shots at him.  Miller was struck two times in the back.  Philadelphia Police Officer Carlos Rodriguez responded to the scene and found Miller on the ground.  Miller was put into Officer Rodriguez's vehicle and transported to Temple University Hospital, where he was pronounced dead.
>
> The next day, on March 9, 2016, a memorial was held for Miller at a speakeasy on 28th and Huntingdon Streets in Philadelphia.  During the evening, Eric Bright, Jeffrey Best, and three women, left the speakeasy to go outside and drink.  In the meantime, someone called [Appellant] and told him that Bright was standing

---

[1] 42 Pa.C.S. §§ 9541-9546.

outside on 28th and Huntingdon. [Appellant] subsequently drove to the location, and upon spotting Bright, ran up to the group with a gun in his hand. [Appellant] told everyone to not move and put his hands in Bright's pockets. He then began to fire multiple shots at Bright. While [Appellant] was shooting, the rest of the group ran for safety. When the shots stopped, Best returned to the scene, and found Bright lying on the ground showing little signs of life.

Philadelphia Police Officers, who were in the area, heard the gunshots and responded to the scene. Upon arriving, they found Bright lying in between two parked cars and suffering from multiple gunshot wounds. Bright was shot seven times: twice in the back, and once in the chest, face, left arm, left palm, and right ring finger. The officers put Bright into their vehicle and transported him to Temple University Hospital, where he was pronounced dead.

Philadelphia Police Detectives then conducted investigation of the two shootings. During the course of the investigations, Aikeem Corley positively identified [Appellant] as Phillip Miller's shooter. Further, Jeffrey Best positively identified [Appellant] as Eric Bright's shooter. Additionally, police recovered a Smith and Wesson nine-millimeter semiautomatic in an unrelated incident approximately five months after the shootings. Ballistics confirmed that the weapon was used in both murders.

*Commonwealth v. Jones*, 2018 WL 4907581, *1 (Pa. Super., filed Oct. 10, 2018) (unpublished memorandum), *quoting* Trial Court Opinion, 1/3/18, 2-4 (citation to notes of testimony and exhibits omitted; formatting in brackets).

At a non-jury trial, held on April 24-27, 2017, several police officers and detectives, the Philadelphia Deputy Chief Medical Examiner, and eyewitnesses to the shootings testified. Appellant did not take the stand or present evidence on his own behalf. On both docket numbers, the court found Appellant guilty of two counts each of first-degree murder and carrying a firearm on public streets or public property in Philadelphia, and one count of carrying a firearm

without a license.[2]   The court imposed an aggregate sentence of life imprisonment without parole.[3]   After the denial of a post-sentence motion, Appellant filed a direct appeal in which he challenged the weight and sufficiency of the evidence.[4]   ***Jones***, 2018 WL 4907581 at *2.   On October 10, 2018, our Court affirmed the judgments of sentence.   ***Commonwealth v. Jones***, 200 A.3d 544 (Pa. Super. 2018) (table).   Appellant sought further review.   On March 12, 2019, our Supreme Court denied *allocatur*.   ***Commonwealth v. Jones***, 204 A.3d 359 (Pa. 2019) (table).

On November 18, 2019, Appellant filed a *pro se* PCRA petition.   Counsel was appointed and filed a no-merit letter pursuant to ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*), that addressed the claims presented in the *pro se* petition.[5]   Appellant subsequently filed a counseled

_____

[2] 18 Pa.C.S. § 2502(a), 18 Pa.C.S. § 6108, and 18 Pa.C.S. § 6106(a)(1), respectively.

[3] The aggregate term included concurrent imprisonment terms of life imprisonment without the possibility of parole for each murder conviction, one to two years of imprisonment for each conviction for carrying firearms on public streets or public property in Philadelphia, and one and one-half to three years of imprisonment for carrying a firearm without a license.

[4] Our Court reinstated Appellant's direct appeal rights after an initial appeal was dismissed due to Appellant's failure to file a docketing statement pursuant to Pa.R.A.P. 3517.

[5] The no-merit letter appears to only have been included in the lower court's docket at CP-51-CR-0006302-2016, however, a "condensed" identification of the docket numbers for both cases on appeal appears on the letter.   No-Merit Letter, 4/21/20, 1 ("CP-51-CR-6302/3-2016").   The PCRA court advises in its opinion that it found that the no-merit letter was inadequate and that it
*(Footnote Continued Next Page)*

motion requesting the recusal of the PCRA judge who originally sat as the trial judge and an amended PCRA petition in which counsel raised the ineffective assistance of counsel and newly discovered evidence claims that are presented in this appeal. Amended PCRA Petition, 11/14/20, ¶ 12(a)-(b). The PCRA court denied the recusal motion. Order, 11/20/20. After the Commonwealth filed a responsive brief, the PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. Rule 907 Notice, 9/8/21. Appellant filed a response to the Rule 907 dismissal notice challenging the adequacy of his jury trial waiver colloquy to advance his ineffective assistance of counsel claim. Response to Rule 907 Notice, 10/29/21, ¶¶ 4-6. The PCRA court dismissed the petition on November 5, 2021. Order, 11/5/21. Appellant timely filed notices of appeal and voluntarily filed a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[6] Notices of Appeal, 11/5/21; Rule 1925(b) Statement, 11/17/21.

---

ordered counsel to either file a supplemental **Finley** letter or an amended petition. PCRA Court Opinion, 2/1/22, 2.

[6] Appellant's counsel filed two notices of appeal and each notice of appeal listed both trial court docket numbers. The notices, while identical in content, were distinct filings that were docketed at different times. **See** Notice of Appeal for 2278 EDA 2021, 1 (time-stamped as electronically filed at 11:24:40 p.m); Notice of Appeal for 2279 EDA 2021, 11/5/21, 1 (time-stamped as electronically filed at 11:22:18 p.m.). The notices comply with Pa.R.A.P. 341, which "requires that when a single order resolves issues arising on more than one docket, separate notices of appeal must be filed from that order at each docket." **Commonwealth v. Young**, 265 A.3d 462, 477 (Pa. 2021). **See also Commonwealth v. Johnson**, 236 A.3d 1141, 1145-48 (Pa. Super. 2020) (*en banc*) (finding a single defendant appealing from multiple dockets

*(Footnote Continued Next Page)*

Appellant presents the following issues for our review:

1.  Did the PCRA [court] err by denying [Appellant's] claim that [the PCRA court judge], as the waiver court judge, should have recused himself from reviewing [Appellant's] PCRA petition?

2.  Did the PCRA court err when it denied [Appellant's] claim that trial counsel was ineffective for coercing him into a bench trial by claiming the Commonwealth would withdraw its pursuit of the death penalty in exchange for said waiver?

3.  Did the PCRA court err when it denied [Appellant's] newly discovered evidence claim regarding lead Detective Nathaniel Williams' qualifying misconduct[?]

Appellant's Brief at 7 (answers of the lower court omitted; formatting in brackets).[7]

"We review a ruling by the PCRA court to determine whether it is supported by the record and is free of legal error. Our standard of review of

_____

may include multiple docket numbers on each notice of appeal, but still must file separate notices of appeal for each docket); Pa.R.A.P. 105(a) (the Rules of Appellate Procedure are to be liberally construed to effectuate, *inter alia,* justice).

[7] After Appellant voluntarily filed a Rule 1925(b) statement, the court issued an order directing him to file a Rule 1925(b) statement. Order, 11/10/21, 1. He then filed a second Rule 1925(b) statement. In his first Rule 1925(b) statement, he only identified his ineffective assistance and newly discovered evidence claims. Rule 1925(b) Statement, 11/9/21, 1. In the second statement, he identified those claims along with his recusal claim. Rule 1925(b) Statement, 11/17/21, 1. The trial court's opinion only addresses the ineffective assistance of counsel and newly discovered evidence claims. PCRA Court Opinion, 2/1/22, 4-9. Because the court ordered Appellant to file a Rule 1925(b) statement after he already voluntarily filed one, and the second statement was filed within the time period set forth by the court's Rule 1925 order, we will decline to find that Appellant waived his recusal claim by not including it in his first Rule 1925(b) statement.

a PCRA court's legal conclusions is *de novo*." ***Commonwealth v. Cousar***, 154 A.3d 287, 296 (Pa. 2017) (citations omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Bishop***, 266 A.3d 56, 62 (Pa. Super. 2021) (citation omitted).

In his first issue, Appellant claims that the PCRA court erred by denying his recusal motion. Appellant's Brief at 11-13. He acknowledges that it is preferable for the same judge who presided at trial to also preside over PCRA proceedings, that the standard for recusal provides that judges should recuse themselves if they doubt their ability to preside impartially or where their impartiality can be reasonably questioned, and that the burden of persuasion for recusal rested with him as the moving party. *Id.* at 11-12. He argues that recusal was appropriate because he was convicted after a non-jury trial and the two homicide verdicts "evidence the [c]ourt's belief in [his] criminal culpability." *Id.* at 13. As further support for recusal, he cites that the lower court indicated that his sentence was "well deserved" and "appropriate under all circumstances," and that the murders in this case were "a great loss to the [victims'] families" and a "senseless crime." *Id.*, ***citing*** N.T. 4/27/17, 140-141.

When a motion for recusal is denied, an appellate court's function is to determine whether the judge abused his or her discretion in denying recusal. ***Reilly by Reilly v. Southeastern PA. Transp. Auth.***, 489 A.2d 1291, 1300 (Pa. 1985). In filing a motion for recusal, the moving party must allege facts

tending to show bias, interest, or other disqualifying factors. ***Id.*** A party moving for recusal need not demonstrate actual prejudice, but rather an appearance of impropriety or factors or circumstances that reasonably question a jurist's impartiality. ***In re Lokuta***, 11 A.3d 427, 435-36 (Pa. 2011). On appeal following the denial of a recusal motion, we place the burden on the party requesting recusal to establish that the judge abused his or her discretion. ***See Commonwealth v. White***, 734 A.2d 374, 384 (Pa. 1999) ("It is Appellant's burden to establish that [the judge] abused his discretion by denying her recusal motion."). We presume that judges are fair and competent. ***Commonwealth v. Shannon***, 184 A.3d 1010, 1018 (Pa. Super. 2018) (citation omitted).

As acknowledged by Appellant, our Supreme Court has expressed a strong preference for a trial judge to preside over a petitioner's post-conviction review proceedings to promote judicial efficiency. ***See, e.g., Commonwealth v. Abu-Jamal***, 720 A.2d 79, 90 (Pa. 1998) ("Generally, it is deemed preferable for the same judge who presided at trial to preside over the post-conviction proceedings since familiarity with the case will likely assist the proper administration of justice."). That preference, however, yields to the decisions of the sitting jurist on matters of disqualification. ***See*** Pa.R.Crim.P. 903(C) ("The trial judge, if available, shall proceed with and dispose of the [post-conviction review] petition in accordance with these rules, unless the judge determines, in the interests of justice, that he or she should be disqualified.").

In this instance, we cannot find that the PCRA court abused its discretion by denying Appellant's recusal motion. The arguments made in favor of the motion below mirror the arguments in Appellant's appellate claim: that the trial court was supposedly biased against Appellant by virtue of the verdicts reached by the court and the court's comments at sentencing concerning the appropriateness of the sentence imposed, the fact that the court felt that the sentence was "well-deserved," the characterization of the crime committed as "senseless," and the court's indication that the murders resulted in "a great loss to the [victims'] families." Recusal Motion, 9/3/20, ¶ 10.

We are unable to infer that the verdicts by themselves were any proof of bias. *See Abu-Jamal*, 720 A.2d at 90 ("Adverse rulings alone do not, however, establish the requisite bias warranting recusal, especially where the rulings are legally proper."). Moreover, we cannot consider that the court's statements at sentencing were improper and evidence of bias because – even though Appellant was subject to mandatory life imprisonment terms – the court was required by the Sentencing Code to consider the need for crafting a sentence that was consistent with, *inter alia*, the protection of the public and the gravity of the offenses as they related to the impact on the life of the victims and on the community. Because the cited comments at sentencing reflected the court's consideration of the mandatory sentencing factors under 42 Pa.C.S. § 9721(b), we do not find that they provided any basis for recusal. *See, e.g., Commonwealth v. Brown*, 141 A.3d 491, 499 (Pa. Super. 2016) (judge's statement at sentencing that a twenty-year imprisonment sentence

was insufficient reflected careful consideration of the sentencing factors set forth in 42 Pa.C.S. § 9721(b), as required by statute and case law, and did not furnish a basis for a recusal claim on PCRA review).

Having reviewed the record in this case, we are unpersuaded that Appellant's recusal claim revealed any proof of bias on the part of the lower court or hinted at an appearance of impropriety. Given the stated preference for trial judges sitting as post-conviction review jurists and our presumption that judges are fair and competent, we are unable to conclude that the denial of Appellant's recusal claim was an abuse of discretion.

In his second issue, Appellant claims that his trial counsel provided ineffective assistance by "coercing him into a bench trial by claiming [that] the Commonwealth would withdraw its pursuit of the death penalty in exchange for" a waiver of his right to a jury trial. Appellant's Brief at 10, 13-15.

As to a claim asserting ineffective assistance of counsel, we are guided by a well-settled set of precepts:

> We presume counsel's effectiveness, and an appellant bears the burden of proving otherwise. To establish ineffectiveness of counsel, a PCRA petitioner must plead and prove: his underlying legal claim has arguable merit; counsel's actions lacked any reasonable basis; and counsel's actions prejudiced him. Failure to satisfy any prong of the ineffectiveness test requires dismissal of the claim. Arguable merit exists when the factual statements are accurate and could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

*Commonwealth v. Urwin*, 219 A.3d 167, 172 (Pa. Super. 2019) (internal citations and quotation marks omitted). "[W]hen a defendant claims that his jury waiver was not knowing and voluntary due to his counsel's ineffectiveness, to prove actual prejudice the defendant must demonstrate a reasonable probability that the result of the waiver proceeding would have been different absent counsel's ineffectiveness." *Commonwealth v. Mallory*, 941 A.2d 686, 702 (Pa. 2008).

When a defendant choses to waive the right to a trial by a jury, Pa.R.Crim.P 620 provides, as follows, that a colloquy shall appear of record:

> In all cases, the defendant and the attorney for the Commonwealth may waive a jury trial with approval by a judge of the court in which the case is pending, and elect to have the judge try the case without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness.

Pa.R.Crim.P. 620. The essential elements of a jury waiver "are the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel." *Commonwealth v. Williams*, 312 A.2d 597, 600 (Pa. 1973). "[T]he use of a written jury trial waiver form has been deemed sufficient in the absence of an oral jury trial waiver colloquy." *Commonwealth v. Michaud*, 70 A.3d 862, 870 (Pa. Super. 2013), *citing Williams*, 312 A.2d at 599-600.

When a presumptively-valid waiver is collaterally attacked under the guise of ineffectiveness of counsel, it must be analyzed like any other ineffectiveness claim … [T]he analysis must focus on the totality of relevant circumstances. Those circumstances include the defendant's knowledge of and experience with jury trials, his explicit written waiver (if any), and the content of relevant off-the-record discussions counsel had with his client.

*Mallory*, 941 A.2d at 698.

On PCRA review, Appellant asserted that his counsel coerced him into waiving his jury trial rights by improperly telling him that the Commonwealth would forgo a pursuit of a capital sentence if he entered a jury trial waiver:

He was informed by trial counsel that this was a death penalty case. It was for this reason, and this reason only, that he waived his right to a jury trial, believing that, by waiving his right to a jury trial, he would no longer be eligible for the death penalty if convicted. Based on the transcripts, it appears there was discussion between the Commonwealth and defense counsel about a possible waiver, but there is nothing in the record to indicate or suggest *why* the Defendant waived his right to a jury trial, in a double murder case, before [the trial judge]. The undersigned can think of no reason for why the Defendant, before th[e trial c]ourt, would waive his waive his right to a jury trial, in a double murder case, without consideration for said waiver.

Amended PCRA Petition, 11/14/20, ¶ 12(a) (emphasis in original; formatting in brackets; record citation omitted). The PCRA court denied this claim for lack of merit because it was contradicted by the statements made under oath by Appellant in his jury waiver colloquy, and Appellant made no proffer to support his assertion of coercion. PCRA Court Opinion, 2/1/22, 5-7.

Here, the certified record includes separate written jury trial waiver colloquies for each of Appellant's underlying cases. Each addressed all the

essential elements for a jury trial waiver that were addressed in **Williams**. Notably, Appellant agreed in the written jury trial waiver colloquies that the maximum sentence for his murder charges was life imprisonment. Written Jury Trial Waiver Colloquies, 4/24/17, ¶ 38. The trial court also conducted an oral jury trial waiver colloquy in which Appellant confirmed that his waiver of his jury trial rights was not the product of threats, coercion, or promises. PCRA Court Opinion, 2/1/22, 7. The Commonwealth included the following pertinent section of the oral colloquy in its motion to dismiss the PCRA petition:

> **THE COURT:** Understanding all of those things; how a jury trial would work; how a judge trial would work; is it still your decision to adhere to your decision to have a judge trial?
>
> **THE DEFENDANT:** Yes. That is what I want.
>
> **THE COURT:** Has anyone promised you anything or anybody threaten you in any way or used any kind of force against you to get you to give up your right to a jury trial?
>
> **THE DEFENDANT:** No, sir.
>
> **THE COURT:** You're doing it of your own free will?
>
> **THE DEFENDANT:** Yes, sir.

Commonwealth Motion to Dismiss, 8/16/21, 5, **quoting** N.T. 4/24/17, 15-16.

A criminal defendant should not be permitted to extricate himself from an otherwise valid jury trial waiver premised upon a sentencing issue unless he can prove that his jury waiver was part of an explicit agreement for a sentencing concession. **See, e.g., Commonwealth v. Houck**, 948 A.2d 780,

788 (Pa. 2008) ("[I]f a defendant seeks to invalidate an otherwise valid jury waiver based on a trial court's recitation of his or her potential sentence, the defendant should be required to demonstrate that his or her understanding of the length of the potential sentence was a material factor in making the decision to waive a jury trial."). In this instance, the oral and written jury waiver colloquies show that Appellant waived his jury trial rights without any agreement as to a potential sentence and that he entered that waiver with the knowledge that the Commonwealth was only seeking life imprisonment sentences for his murder charges.

Appellant could not prevail on the instant claim in the absence of an additional proffer of evidence concerning the prior advice of his counsel because he could not obtain post-conviction relief by merely claiming that he lied during his jury waiver colloquy. *See Commonwealth v. Bishop*, 645 A.2d 274, 277 (Pa. Super. 1994) (relying, in the context of a claim of ineffectiveness in connection with an alleged jury waiver based on coercion, on caselaw addressing claims of coerced guilty pleas and maintaining that a defendant cannot prevail by claiming that he lied previously while under oath during a guilty plea colloquy). The PCRA court properly appreciated that Appellant could only succeed on his claim by proffering independent corroboration that his trial counsel had improperly induced his jury trial waiver. PCRA Court Opinion, 2/1/22, 6-7, *citing Commonwealth v. Carey*, 340 A.2d 509, 511 (Pa. Super. 1975) ("Since it is rather common for a disappointed defendant to claim that he was induced to waive a constitutional

right because of some promise by his counsel … it has been held that ordinarily no relief will be granted unless the defendant's testimony is 'corroborated by some other source which is accepted as truthful.'") (citations omitted). In the absence of a proffer of extrinsic evidence concerning the advice of his prior counsel, Appellant was bound by the statements he made during his jury trial waiver colloquies.[8] Accordingly, the PCRA court properly denied the instant claim as meritless.

In his last issue, Appellant asserts that the PCRA court erred by denying him relief on his claim of newly discovered evidence of misconduct by the lead detective in his cases, Nathaniel Williams. Appellant's Brief at 15-19. He does not address the nature of the evidence supporting the claim other than to refer to "Police Misconduct Disclosure Notices" about Detective Williams and another detective (Philip Nordo) that he notes are "referenced but not attached."[9] *Id.* at 15. He asserts that Detective Williams' "position as lead detective on both cases and trial testimony raises significant issues given his now known history of misconduct," and that, if that "history [had] been known

_____

[8] While it was not acknowledged by Appellant in any of his filings, we note that Appellant's ability to proffer additional evidence in support of the instant claim was obviously affected by the untimely passing of his trial counsel prior to the filing of his amended PCRA petition. PCRA Court Opinion, 2/1/22, 7 n.1 (acknowledging that trial counsel passed away on April 15, 2020).

[9] Appellant referred to a disclosure of "qualifying misconduct" by Detective Williams in his amended PCRA petition, but never appended a copy of that disclosure to his petition. Amended PCRA Petition, 11/14/20, 12(b).

at the time of trial," he would not have opted for a non-jury trial and would have been acquitted by a jury. *Id.* at 19.

In the absence of any discussion of the nature of the "newly discovered evidence" at the focus of Appellant's claim in his appellate brief or his amended PCRA petition, the PCRA court has offered us the following summary of the "evidence:"

> From October to November of 2017, Detective Nathaniel Williams is alleged to have used his authority as a police officer to access a police database in order to investigate a woman who had accused his cousin of stalking and harassment. He is also alleged to have then lied to his superior officers about his actions. *See Commonwealth v. Nathaniel Williams*, MC-51-CR-0030428-2019, Trial Court Opinion of Crystal Bryant-Powell, J., filed October 18, 2021, at pp. 2-5. Detective Williams was arrested in November of 2019, on charges of tampering with public records, obstruction of the administration of law, unsworn falsification to authorities, and tampering with evidence. *See* Docket No. MC-51-CR-0030428-2019. On September 11, 2020, the case was dismissed for lack of evidence. *Id.* The Commonwealth refiled the original complaint, which was again dismissed for lack of evidence. *Id.* The Commonwealth appealed and the case is currently pending in the Superior Court. *See* Docket No. 980 EDA 2021.

PCRA Court Opinion, 2/1/22, 8-9.[10]

After-discovered evidence is a recognized ground for relief under the PCRA. *See* 42 Pa.C.S. § 9543(a)(2)(vi). To prevail on a claim of after-discovered evidence, a PCRA petitioner must demonstrate that the evidence: "(1) could not have been obtained prior to the conclusion of the trial by the

---

[10] As of the drafting of this memorandum, the Commonwealth's appeal from the dismissal of the charges against Williams remains pending.

exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted." ***Commonwealth v. Pagan***, 950 A.2d 270, 292 (Pa. 2008). Failure to satisfy one prong of this four-part test is fatal to the claim. ***See Commonwealth v. Solano***, 129 A.3d 1156, 1180 (Pa. 2015) ("As this test is conjunctive, failure to establish one prong obviates the need to analyze the remaining ones.").

The PCRA court's denial of this claim is two-fold. First, the court advises that, because the alleged misconduct at the focus of the "evidence" did not take place until six months after Appellant's trial, the "evidence" at issue could not be considered after-discovered evidence for purposes of a claim under 42 Pa.C.S. § 9543(a)(2)(vi). PCRA Court Opinion, 2/1/22, 8. Second, the court noted that, even if the "evidence" of alleged misconduct by Detective Williams were available at trial, it would not have likely compelled a different trial verdict because the evidence "had no nexus to [Appellant's] case, and little probative value regarding Detective Williams's work as a homicide detective generally." ***Id.*** The Commonwealth separately argues that any evidence of misconduct by Detective Williams would not have affected the trial verdicts because Detective Williams did not participate in the interviews of any of the eyewitnesses regarding the murder of victim Miller, and "there was ample untainted evidence to find [Appellant] guilty of murdering victim Bright." Appellee's Brief at 19-21.

We discern multiple reasons for denying the after-discovered evidence claim as meritless. As an initial matter, the presently-dismissed criminal charges against Detective Williams could not constitute evidence for purposes or an after-discovered evidence claim because criminal indictments or criminal charges are based upon allegations, not proven facts. *See Commonwealth v. Delbridge*, 859 A.2d 1254, 1258 (Pa. 2004) (stating "[a]llegations are not evidence"); *see also Commonwealth v. Griffin*, 137 A.3d 605, 609-10 (Pa. Super. 2016) (explaining that, allegations or accusations contained in a criminal indictment, or criminal charges, are not evidence), *appeal denied*, 157 A.3d 476 (Pa. 2016); *Commonwealth v. Shelley*, 2022 WL 1087379, *7 (Pa. Super., filed Apr. 12, 2022) (rejecting an after-discovered evidence claim based on the criminal charges against Detective Williams and noting that "neither the criminal indictment nor criminal charges constitutes evidence for purposes of an after-discovered evidence claim") (unpublished memorandum cited for persuasive value).

Next, even if the criminal allegations against Detective Williams could be considered evidence, this claim would fail because the evidence, which was not alleged to have stemmed from misconduct in Appellant's case, would be solely used to impeach the credibility of the detective with respect to his accounts of the interviews he conducted and the witness statements he

recorded.[11] **See Commonwealth v. Johnson**, 179 A.3d 1105, 1123 (Pa. Super. 2018) (holding that the criminal conviction of a police detective, who was involved in the questioning of a witness that identified the petitioner as the perpetrator of a fatal shooting, did not constitute after-discovered evidence because evidence of the conviction would only be used for impeachment purposes and there was no evidence that the police detective committed misconduct in the petitioner's case), **appeal denied**, 197 A.3d 1174 (Pa. 2018); **see also Commonwealth v. Foreman**, 55 A.3d 532, 537 (Pa. Super. 2012) (holding that, "new evidence" of the filing of criminal charges against a police detective in an unrelated matter does not satisfy the after-discovered evidence test because the "new evidence" would be used solely for impeachment purposes and would not likely result in a different verdict); **Griffin**, 137 A.3d at 610 (stating that, even if the allegations contained in an indictment or criminal complaint were "evidence," a petitioner would still not satisfy the after-discovered evidence test because the alleged evidence would be used solely for impeachment purposes); **Shelley**, 2022 WL

---

[11] With respect to the case of victim Bright, Detective Williams interviewed and took a statement from Jeffrey Best. N.T. 4/25/17, 16-40, 45-73; N.T. 4/27/17, 7-8; Commonwealth Exhibit 271 (Jeffrey Best Statement, 5/11/16). With respect to the case of victim Miller, Detective Williams interviewed and took a statement from Zsahniah Jones, and attempted to interview Nasir Brown Simpson, the person who had been caught with the gun used in the murders. N.T. N.T. 4/26/17, 9-36; N.T. 4/27/17, 9-16, 67-70, 85-86; Commonwealth Exhibit 51 (Zsahniah Jones Statement, 5/13/16). Detective Williams also testified that he received a letter from Reginald Hutson and spoke to him about inculpatory statements made by Appellant, though he did not conduct a formal interview of Mr. Hutson. N.T. 4/26/17, 80-83; N.T. 4/27/17, 17-18, 30.

1087379 at *8 (denying an after-discovered evidence claim based on the criminal charges against Detective Williams on the grounds that the "evidence" would be used only to impeach the credibility of Detective Williams and another detective to demonstrate that the detectives falsified police statements implicating Shelley as the perpetrator of a fatal shooting) (unpublished memorandum cited for persuasive value).

Lastly, the PCRA court could not have erred by concluding that the allegations of misconduct involving Detective Williams likely would not have resulted in a different verdict if a new trial were granted. Here, the focus of Appellant's claim was alleged conduct by the detective that supposedly took place six to seven months following Appellant's trial and had no apparent connection to the investigation of Appellant. PCRA Court Opinion, 2/1/22, 8-9. The allegations involved supposed efforts of the detective to investigate a woman who had made accusations of stalking and harassment against the detective's cousin and that the detective then lied to his superior officers about his actions. *Id.* Even if the underlying allegations of misconduct were accepted as true, they suggested that the detective embarked on a retaliatory investigation and then was dishonest about his efforts to engage in that investigation. The instant case has no apparent connections with the basis of the allegations at the focus of the claim: the detective was not alleged to have engaged in a retaliatory investigation of Appellant and the misconduct allegations were based on events that took place months after Appellant's trial. Thus, Appellant could not establish a nexus between his case and the

purported after-discovered evidence and thus could not establish the likelihood of a different outcome in his case. ***See Foreman***, 55 A.3d at 537-38 (Pa. Super. 2012) (Foreman's "new evidence" regarding criminal charges against a detective who testified at his criminal trial did not justify a new trial; Foreman failed to show any nexus between his case and the detective's alleged misconduct in an incident which occurred more than two years after Foreman's conviction and the evidence would be used solely to impeach the detective); ***Commonwealth v. Soto***, 983 A.2d 212, 215-216 (Pa. Super. 2009) (holding that the discovery of a series of thefts committed by a police chemist following appellants' convictions failed to provide a basis for awarding new trials on narcotics charges where appellants failed to show to show that the evidence of the chemist's improper activities would have compelled different results at their trials, and noting that the assertions that the chemist likely stole drugs years before or that she added weight to the contraband in evidence was conjecture).

For these reasons, we cannot conclude the PCRA court erred or abused its discretion in denying relief on Appellant's after-discovered evidence claim.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 11/17/2022*